UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT       FILED

LORI RAYMOND, CARMEN GONZALEZ,         CIVIL ACTION NO. 303 CV 0118 (MRK)
MIGDALIA MENDEZ, KIMBERLY DADE,
MARY PAVLIK, DARRYL PAULDING,
TERRI KEATON, ELMORE SWEET,
JUDITH SHEPAUM, GLORIA GORDON,
KAREN MORIN and DONNA MCMAHON
    Plaintiffs,
    Individually and as representatives
    of all persons similarly situated
  v.

JOHN ROWLAND, Governor of
Connecticut, PATRICIA WILSON-COKER
Commissioner of the Connecticut
Department of Social Services,
In their official capacities,
    Defendants                                    SEPTEMBER 11, 2003


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT JOHN ROWLAND'S MOTION TO DISMISS

The defendants move that the Amended Complaint in this matter be dismissed as against the defendant, John G. Rowland, Governor of the State of Connecticut, on the grounds that he is not a proper party to said action, and therefore said action against the Governor is barred by the Eleventh Amendment and does not meet the exceptions carved out by the U.S. Supreme Court in Ex Parte Young, 209 U.S. 128 (1908). Dismissal is further required due to the absence of a justiciable case or controversy involving the Governor.

The plaintiffs' Amended Complaint, ¶ 3 states "At all times relevant herein, Defendant JOHN ROWLAND was and is the Governor of the state of Connecticut, vested with the supreme executive power of the state. Conn. Const. Art. IV, § 5." The Amended Complaint contains no

further references to the Governor, nor does it make reference to any actions taken by Governor Rowland in regards to the allegations set forth in said Amended Complaint. The only allegations made in the Amended Complaint are against the Defendant Patricia Wilson-Coker, Commissioner of the Department of Social Services.

The touchstone in any analysis of whether a particular state officer is a proper defendant in a suit to enjoin the enforcement, operation or execution of a state statute is the case of Ex Parte Young. In Young, the Court held:

> In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.

Ex Parte Young, 209 U.S. at 157.

The Second Circuit and other circuits have held that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute. See Warden v. Pataki, 35 F.Supp. 2d 354, 359 (S.D.N.Y. 1999). In Warden, plaintiffs brought suit against municipal and state officials, including the Governor, claiming violations of state education and election laws. The state defendants moved to dismiss the complaint as to themselves on the grounds that they were entitled to absolute legislative immunity on the basis of their roles in enacting or signing legislation. The plaintiffs based their claims against Governor Pataki not only on the grounds that he signed the legislation in question, but also on the basis that the New York Constitution charges the Governor with the duty to "take care that the laws are faithfully executed." The District Court held:

> Although there is some authority to support plaintiffs' position..., the vast majority of courts to consider the issue have held—correctly in my view—that a state official's duty to execute the laws is not enough by itself to make that

2

official a proper party is a suit challenging a state statute. See, e.g., 1st Westco Corp. School Dist. 6 F.3d 108, 113 (3d Cir. 1993) ("General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." (Citing Rode v. Dellaciprete, 845 F.2d 1195, 1208 (3d. Cir. 1988).

Warden v. Pataki, 35 F.Supp. 2d at 359; see also Romeu v. Cohen, et al., 121 F.Supp. 2d 264, 272 (S.D.N.Y. 2000), wherein the District Court granted Governor Pataki's motion to dismiss on the grounds that he was not a proper party to the action merely because he is responsible for enforcing the state's laws. In Confederated Tribes & Bands of the Yakama Nation v. Gary Locke, Governor of the State of Washington, 176 F.3d 467 (9th Cir. 1999), the Ninth Circuit Court of Appeals dismissed an action against the defendants (Governor Locke and the State of Washington) on the grounds that the defendants were protected by Eleventh Amendment immunity and could not be sued in federal court without their consent. The plaintiffs' claims for monetary damages against the state and the Governor were barred by the Eleventh Amendment. In addressing the claim for injunctive relief against the Governor, the Court of Appeals held:

> The Tribe contends, however, that it should have been allowed to seek injunctive relief against the Governor under the doctrine of Ex-Parte Young…That doctrine permits actions to be brought in certain circumstances for injunctive relief against state officials who are acting in violation of federal law. Ex Parte Young included an important qualification, however, that is fatal to the Tribe's claims: In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act, or else it is making him a party as a representative of the state, and thereby attempting to make the State a party. Id at 157. The later, impermissible alternative is precisely what the Tribe is attempting to do here. The complaint contains no allegations that the Governor is charged with operating the state lottery, and the state statutes governing the lottery suggest why…Nowhere in these statutes is there any indication that the governor has the responsibility of operating the state lottery or determining where its tickets will be sold. Because the governor lacks the requisite connection to the activity sought to be enjoined, he serves 'merely…as a representative of the state,' and the Tribe is 'thereby attempting to make the state a party.'

3

Yamaka Indian Nation v. Locke, 176 F.3d at 469-70.

In Women's Emergency Network, et al. v. Jeb Bush, et al, 214 F.Supp. 2d 1316, the plaintiffs sued Governor Bush and other state government officials challenging the constitutionality of the state's Choose Life specialty license plate scheme issued pursuant to state statute. Governor Bush moved to dismiss the action against him on the grounds that he was not a proper party. The District Court held:

> The primary question before the Court is whether Governor Bush is a proper party to this suit. In order to challenge the constitutionality of the Act, Plaintiffs must have brought this action against the state official or agency responsible for enforcing the allegedly unconstitutional scheme…Accordingly, Plaintiffs joined as Defendants Governor Bush and Fred Dickinson, as Executive Director of the [Highway Safety and Motor Vehicles] Department. However, Governor Bush argues that he is not a proper party because the 'allegations …show no connection between the Governor and the unconstitutional conduct that is complained of…' Indeed, a 'connection' is necessary. In Luckey v. Harris, the Eleventh Circuit articulated the scope of the Ex Parte Young exception to the Eleventh Amendment… Specifically, the Court provided: [P]ersonal action by defendants individually is not a necessary condition of injunctive relief against the state officers in their official capacity. All that is required is that the official be responsible for the challenged action. As the Young Court held, 'it is sufficient that the state officer sued must, by virtue of his office, have some connection' with the unconstitutional act or conduct complained of. Whether [this connection] arises out of general law, or is specially created by the act itself, is not material so long as it exists…Governor Bush's only 'connection' is a position which he shares with six other individuals. Furthermore, the Executive Director of the Department is charged with 'overall duty and responsibility'….Thus, because the Governor lacks a sufficient connection to the Act in question, Plaintiffs are left to argue that Governor Bush is a proper party because he 'signed into law' the Act at issue and because Article IV, § 1 of the Florida Constitution vests Governor Bush with executive power to enforce the laws of the State….The Court is not persuaded by either of these arguments….The Court determines that Governor Bush does not bear a sufficient connection with the Act and, as such, the Governor's motion to dismiss is granted.

Women's Emergency Network, et al. v. Bush, et al, Id. at 1317-19.

4

Turning to the present action, Governor Rowland is not a proper party to this action. The Plaintiffs have failed to allege any connection between Governor Rowland and the alleged violations of the Americans with Disabilities Act or Section 504 of the Rehabilitation Act. In fact, the only reference to Governor Rowland in the Amended Complaint is that he is vested with the supreme executive power of the State, pursuant to Article IV, § 5 of the Connecticut Constitution. The foregoing caselaw makes it clear that his position as Governor is insufficient to establish a connection between him and any of the alleged violations. As such, the exception to the Eleventh Amendment as articulated by Ex Parte Young is not applicable with regard to the Governor. Accordingly, the action as against Governor Rowland is barred by the Eleventh Amendment.

In addition, the plaintiffs' action against Governor Rowland cannot be heard in federal court because it is not a "case or controversy" within the meaning of Article III. Satisfying the requirements of standing is an "irreducible constitutional minimum" that must be met by all plaintiffs seeking to bring an action in federal court. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). In order to meet this burden, plaintiffs must demonstrate not only that they have suffered an injury in fact but also that their injury is fairly traceable to the challenged action of the defendant and that it is likely, as opposed to merely speculative, that their injury could be redressed by a judgment against the defendant. Id. The simple fact that a plaintiff alleges an injury does not satisfy the inquiry into whether the plaintiff has a case or controversy against a particular defendant. See Okpalobi v. Foster, 244 F.3d 405, 426 (5th Cir. 2001)(en banc); Albanese v. Federal Election Commission, 78 F.3d 66, 68-69 (2d. Cir. 1996). The Amended Complaint (1) fails to allege any misconduct on behalf of Governor Rowland to which their injury could possibly be traced, and (2) demonstrates that redress can only be achieved by a

judgment against the Commissioner of DSS, rather than the Governor, because all of the actions complained of have been delegated to her by the state legislature.

As plaintiffs acknowledge in the Amended Complaint, the Connecticut General Assembly has delegated the responsibility for administering each DSS program at issue in this case to the Commissioner of DSS (See Amended Complaint, ¶ 4). The Commissioner is charged with the responsibility of administering "all law under the jurisdiction of the Department of Social Services" and "all such funds allotted to the department in accordance with federal law ." Conn. Gen. Stat. § 17b-3(a-b). Furthermore, compliance with the ADA has been explicitly delegated to the agency by statute. See Conn. Gen. Stat. § 46a-77(c).

While plaintiffs repeatedly use the word "defendants" in their complaint, each grievance raised therein relates specifically to the administration of DSS programs and falls entirely within the purview of the Commissioner's authority (See, e.g., Amended Complaint ¶ 32, "Defendants have failed to adopt and codify policies and procedures to accommodate disabled persons in accessing and maintaining eligibility for benefits, programs and services administered by DSS"). The only reference fairly attributable to the Governor's conduct or authority in the entire complaint is the simple statement "At all times relevant herein, Defendant John Rowland was and is the Governor of the State of Connecticut, vested with the supreme executive power of the state" (Amended Complaint ¶ 3). In Okpalobi v. Foster, the plaintiffs' claim against the Governor of Louisiana did not satisfy the causal element of standing because the governor had no individual involvement with the enforcement of the challenged statute and had no statutory responsibility connected to its enforcement. Okpalobi v. Foster, 244 F.3d at 426. A similar disjunction exists here, where the complaint is devoid of any allegation that the Governor was personally involved with the challenged state actions and there is no apparent connection

6

between the Governor's general executive authority and DSS's discharge of its statutory obligations. Plaintiffs have failed to allege that any act on behalf of the Governor has caused, will cause, or could possibly cause any injury to them.

Furthermore, plaintiffs' grievances cannot be redressed through a judgment against the Governor because such a judgment would add nothing to the force of a judgment against the Commissioner of DSS[1]. The redress element of the standing requirement forces the plaintiffs to limit their action to only those defendants authorized by law to execute the injunctive order that they seek. See Okpalobi, Id. A state officer cannot be enjoined to act in any way that is outside the scope of his authority. Id. at 427. Here, there is no redress available against the Governor that is consistent with the General Assembly's delegation of authority to the Commissioner of DSS. In seeking to enjoin the Governor to perform specific duties delegated to another state officer, plaintiffs are asking the Court for what it cannot grant. The naming of Governor Rowland as a defendant in this lawsuit does nothing to advance the plaintiffs' case; likewise, his

---

[1] The allegations against the Governor in this action cannot be the subject of class-wide relief. Although the Amended Complaint makes reference to the closure of four DSS sub-offices by the defendants, the Amended Complaint alleges violations of the ADA and § 504 of the Rehabilitation Act based upon the defendants' failure to provide reasonable accommodations to all disabled persons served by DSS, no matter where they reside; the denial of meaningful access to DSS benefits, programs, and services; failure to provide adequate notice of and information regarding nondiscrimination requirements in operation of DSS benefits, programs and services pertaining to disabled applicants and recipients; and failure to adopt appropriate grievance procedures that would allow plaintiffs and members of the plaintiff class to file grievances and obtain relief when their rights under the ADA and § 504 are violated in DSS benefits, programs and services. Based upon the holding in Okpalobi, the Commissioner of DSS and not the Governor has the statutory authority to provide the injunctive relief sought. Hence, the plaintiff fails to establish an Article III case or controversy in this regard as well. Furthermore, the office closings only affected individuals who lived in the towns that were previously served by the closed offices. The proposed class, however, is not limited to disabled individuals who live in the affected towns, but extends throughout the state to anyone who is adversely affected by DSS's alleged failure to provide reasonable accommodations. The office closings, therefore, cannot be the basis for class-wide relief. See F.R.C.P. 23(b) (2) ("The party opposing the class

dismissal would do nothing to impair it. The plaintiffs have failed to allege any causal connection between the Governor and their alleged injuries, nor have they identified any possible role for the Governor in the redress of those injuries. For these reasons, they have failed to establish an Article III case or controversy against this defendant.

Accordingly, the defendants respectfully request that this Motion to Dismiss be granted.

DEFENDANTS

JOHN ROWLAND, in his official capacity as Governor of Connecticut, PATRICIA WILSON-COKER, in her capacity as Commissioner of the Connecticut Department of Social Services

RICHARD BLUMENTHAL
ATTORNEY GENERAL

Richard J. Lynch
Assistant Attorney General

Peter L. Brown
Assistant Attorney General
Federal Bar No. ct12132
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Peter.Brown@po.state.ct.us
Tel.: (860) 808-5210
Fax.: (860) 808-5385

**CERTIFICATION**

has acted…on grounds generally applicable to the class, thereby making appropriate final

I hereby certify that a copy of the foregoing Memorandum of Law was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 11th day of September , 2003, was mailed, first class postage prepaid to:

Shirley Bergert, Esq.
Connecticut Legal Services, Inc.
872 Main Street
P.O. Box 258
Willimantic, CT 06226

Lucy Potter, Esq.
Greg Bass, Esq.
Connecticut Legal Services, Inc.
999 Asylum Avenue
3rd Floor
Hartford, CT 06105-2465

Sharon Langer, Esq.
Caitlin J. Simon, Esq.
Connecticut Legal Services, Inc.
587 Main Street
New Britain, CT 06051

Nadine Nevins, Esq.
Connecticut Legal Services
211 State Street
Bridgeport, CT 06604

Joanne G. Gibau, Esq.
New Haven Legal Assistance
426 State Street
New Haven, CT 06510

Peter L. Brown
Assistant Attorney General

---

injunctive relief…with respect to the class as a whole.")

9