UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

LORI RAYMOND, *et al.*        :      CIVIL ACTION NO.
    Plaintiffs, individually and as :
    representatives of all         :      303CV0118 (MRK)
    persons similarly situated,   :
                                   :
VS.                            :
                                   :
JOHN ROWLAND, Governor of   :
Connecticut, and PATRICIA     :
WILSON-COKER, Commissioner  :      October 31, 2003
of the Connecticut  Department of  :
Social Services, in their official   :
capacities,                         :
    Defendants.                :

## PLAINTIFFS' OPPOSITION TO
## DEFENDANT GOVERNOR JOHN ROWLAND'S MOTION TO DISMISS

### I. INTRODUCTION

Plaintiffs submit this Memorandum in Opposition to Defendant Governor John Rowland's Motion to Dismiss dated September 11, 2003. The Defendant Governor moves to dismiss this action as to himself under Fed. R. Civ. P. 12(b)(1) on the ground of lack of subject matter jurisdiction.

Plaintiffs challenge the failure or refusal of Defendant Department of Social Services (DSS) Commissioner Wilson-Coker and Defendant Governor Rowland to reasonably accommodate the disabling conditions of applicants and recipients who seek to access DSS programs and benefits, in violation of the Americans with Disabilities Act (ADA) (42 U.S.C. § 12132) and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 701 *et seq.* (particularly 29 U.S.C. § 794)). Plaintiffs have brought suit against

both Commissioner Wilson-Coker and Governor Rowland solely in their official

capacities and seeking only declaratory and injunctive relief.

Contrary to the assertions in his motion, Defendant Rowland is a proper party to

the instant action, due to his supreme executive powers prescribed by state statutes and

the Connecticut Constitution. These include his supervisory authority over the

Defendant Commissioner and the policies she implements at his behest, and his

paramount role in state budget formulation and execution.

Plaintiffs' concern about the adequacy of the Defendant Commissioner's

authority to redress their grievances arises, in part, because the office closings that

prompted this action were done to implement the governor's budget priorities.[1]

Plaintiffs would proceed against the Defendant Commissioner alone if she could offer

---

[1]*See* "Talking points for staff layoffs and office closings," Defendants'
Responses to Plaintiffs' First Set of Interrogatories, dated September 17, 2003, ¶ 51
(attached hereto as Exhibit A) ("The budget situation is very serious and is worsening. .
. . In order to live within our means and cut spending, we are forced to lay off
employees and close four DSS offices. . . . [Q:] How was the target of ___ staff arrived
at? [A:] Agency targets were developed by the Office of Policy and Management in
consultation with DSS leadership. . . .[Q:] Have we considered other means to achieve
similar savings? [A:] Spending reductions have already been taken, totaling $___
million, wherever the Governor has unilateral authority to order cuts. Additional
programmatic reductions, limitation and eliminations are under consideration as part of
an overall deficit reduction package."); October 27, 2003 Memorandum from
Defendant DSS Commissioner Patricia A. Wilson-Coker to Community Human
Services Providers and Partners, regarding DSS Regional Realignment (attached hereto
as Exhibit B) ("we have endured staffing and service reductions due to an extended
revenue and budget crisis"); Deposition of Kevin Loveland, dated July 24, 2003,
113:24-25 to 114:1-2 (attached hereto as Exhibit C) ("Q: And do you know what the
rationale for closing the offices was? A: No. I mean it was expressed as a budgetary
savings I think was the rationale I understand."); Defendants' Responses to Plaintiffs'
First Set of Interrogatories, dated September 17, 2003, ¶ 47 (attached hereto as Exhibit
D) (decisions to close DSS offices in late November 2002 were made "under verbal
direction from OPM . . .").

-2-

reasonable assurances that she possessed the ability and authority to independently summon adequate resources to afford full relief. To date, the Defendant Commissioner has not done this. At this stage of discovery in these proceedings, Plaintiffs are not in a position to know what measures she can, in fact, take to staff her offices and structure delivery of services in a way that will assure compliance with the mandates of the ADA and Section 504 of the Rehabilitation Act. The Defendant Governor may need to seek and must authorize any significant revenue necessary for compliance.

Defendant Governor raises two subject matter jurisdiction arguments in support of his motion. First, he contends that Plaintiffs lack standing to assert claims against him, due to a lack of an Article III "case or controversy." Second, he argues that he is entitled to Eleventh Amendment immunity by virtue of not being a proper party to the litigation. Both contentions lack merit. Plaintiffs have standing and their action presents an Article III case or controversy. The Defendant Governor is a proper party to this action and thus is not entitled to Eleventh Amendment immunity. The Defendant Governor's contentions to the contrary lack merit and his motion to dismiss should be denied.

## II. STANDARD OF REVIEW

"When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court must accept as true all factual allegations of the complaint and must draw all reasonable inferences in favor of the plaintiff." Tyson v. Willauer, 2002 WL 31094951, *1 (D.Conn. 2002) (citing Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000)).

-3-

"A plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence." B.H. v. Southington Bd. of Educ., 273 F.Supp.2d 194, 198 (D. Conn. 2003). "A complaint should not be dismissed under Rule 12(b) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. The function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Bartolini v. Ashcroft, 226 F.Supp.2d 350, 353 (D.Conn. 2002) (citations omitted). *See also* Sullivan v. Metro-North R.R. Co., 179 F.Supp.2d 2, 4 (D.Conn. 2002) ("The court may not dismiss a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no sets of facts which would entitled (sic) him to relief."). "[W]here a defendant challenges the district court's subject matter jurisdiction, the court may resolve disputed factual issues by reference to evidence outside the pleadings, such as affidavits." Tyson, 2002 WL 31094951 at *1.


### III.   THE GOVERNOR IS VESTED WITH THE SUPREME EXECUTIVE POWER IN THE STATE OF CONNECTICUT.

The Connecticut Constitution, Article Fourth, prescribes the Governor's powers. The Governor has the "supreme executive power of the state." Conn. Const. Art. IV, § 5. He is responsible to ensure that the laws are faithfully executed. Conn. Const. Art. IV, § 12. The Connecticut General Assembly has adopted legislation based on the Governor's constitutional authority and responsibilities. Connecticut's constitutional

and statutory scheme provide the Governor with plenary and superior authority regarding direction, supervision and control of the operation of state agencies, as well as responsibility and authority for formulating and proposing budgets to and seeking funds from the legislature, and controlling expenditures. Current, as well as prospective, policy and agency budget and expenditures, are within the control of the Governor, and only secondarily within the control of the Commissioner.

State statutes reiterate that the Governor has the supreme executive power of the state.[2] He directs the actions of state agencies, including DSS, and appoints Commissioners who serve as agency department heads within the executive branch.[3] The Governor appoints the DSS Commissioner, with the advice and consent of the General Assembly, and she "serve[s] at the pleasure of the Governor[.]"[4]

The Governor has broad budget making authority and he alone within the executive branch has the power to seek funding in the legislative appropriation process.[5]

---

[2]Conn. Gen. Stat. § 3-1.

[3]Conn. Gen. Stat. §§ 3-6 and 4-6. *See also* Conn. Gen. Stat. § 4-5 (DSS Commissioner defined as "department head" for purposes of appointment by Governor) and Conn. Gen. Stat. § 4-38 (DSS, of which Defendant Wilson-Coker is the Commissioner, is an agency within the executive branch). Commissioners "act as the executive officer of the Governor for accomplishing the purposes" of the department they head. Conn. Gen. Stat. § 4-8.

[4]Conn. Gen. Stat. § 4-6.

[5]The Governor is responsible for the submission of a biennium budget document to the legislature that sets forth his financial programs and recommends adjustments and revisions of the state budget in the mid-year of the biennium. Conn. Gen. Stat. § 4-71. The Governor's budget message is required to include his recommended appropriations, information on vacant positions and those to be filled, and program objectives and supporting schedules of agency expenditures, and he must

-5-

Commissioners do not have equivalent authority and power; rather, they are limited to requesting funds through the Office of Policy and Management (OPM), the Governor's fiscal arm,[6] or seeking federal or other non-state funding.[7] The Governor has veto power over legislative acts, Conn. Const. Art. IV, § 15, and line item veto authority regarding appropriations. Conn. Const. Art. IV, § 16. Thus, the Governor not only has fund-seeking responsibility and authority with the legislature that a Commissioner does not possess, but he also has veto power regarding budget enactments that directly affect the final budget and the availability of funding to an agency.

---

provide draft appropriation bills to carry out his recommendations. Conn. Gen. Stat. §§ 4-72 - 4-74. The Governor is responsible for transmitting supplemental estimates for appropriations necessary by reason of laws or in the public interest. Conn. Gen. Stat. § 4-82.

[6]The Secretary of OPM is charged with assisting the Governor regarding "investigation, supervision and coordination of the expenditures and other fiscal operations of . . . budgeted agencies." Conn. Gen. Stat. § 4-70b. OPM's authority extends beyond budgeting to, *inter alia* ". . . all aspects of state staff planning and analysis in the areas of budgeting, management, planning, . . . [and] intergovernmental policy. . . ." Conn. Gen. Stat. § 4-65a. Under guidelines for economic and planning factors set by the Secretary of OPM and on forms supplied by OPM, agency heads annually submit to OPM and the legislative Office of Fiscal Analysis (OFA) and committee of cognizance for the budgeted agency, estimates of expenditure requirements and estimated revenues for each fiscal year. Conn. Gen. Stat. § 4-77. However, this process does not permit an agency head to independently seek funds from the legislature.

[7]Defendant Commissioner may apply for federal and other non-state funding on behalf of the state. Conn. Gen. Stat. §§ 4-8, 17b-3(b) and 4-28(b). Federal funds are accounted for in the budget, Conn. Gen. Stat. § 4-73(d), including the budget document the Governor presents to the legislature which sets forth his financial program, Conn. Gen. Stat. § 4-71, and are held by the state Treasurer and disbursed "under the direction of, and subject to regulations of, the Governor." Conn. Gen. Stat. § 4-28(a). Federal funds, and all other funds are entered into the records of the General Fund in a manner prescribed by OPM and deemed appropriated to their purposes. Conn. Gen. Stat. § 4-31a.

-6-

The Governor's programmatic and budgeting authority extend to federal block grant programs and fund expenditures.[8] The Governor is charged with submitting recommended allocations of federal block grant funds, including funds from the Temporary Assistance to Needy Families (TANF) block grant[9], to the speaker of the House and president pro tempore of the Senate.[10] TANF funding is the key source of funds for the state's Temporary Family Assistance program administered by DSS.[11] Seeking appropriations of funding from the TANF block grant to resolve noncompliance with federal requirements is a power of the Governor, not the Commissioner of Social Services. While neither Medicaid, nor the Food Stamp program are federal block grants, administration includes reliance on both state and federal funds, and expenditures for these and other programs are subject to the budgeting process.[12]

The Governor retains authority to reduce appropriated expenditures,[13] move

---

[8]"All federal funds expended or anticipated for any purpose shall be accounted for in the budget." Conn. Gen. Stat. § 4-73(d).

[9]Pub. L. No. 104-193 § 901, codified at 42 U.S.C. § 601, note, requires that TANF block grant money be "subject to appropriation by the State legislature."

[10]Conn. Gen. Stat. § 4-28b.

[11]Conn. Gen. Stat. §§ 17b-2(7) and 17b-112, *et seq.*

[12]*See* footnote 7, *supra.*

[13]If the Governor determines there has been a change in circumstances since the budget was passed, with notice to the legislature, the Governor has authority to reduce expenditures (so-called rescission authority). Conn. Gen. Stat. § 4-85.

funds between line items within an agency's appropriation,[14] and control expenditures from the state contingency fund in an emergency when he believes the necessities of an agency warrant an increased appropriation;[15] such funds could potentially address deficiencies in DSS program administration that are in violation of federal law. Thus, even after funds have been appropriated by the legislature, the Governor retains significant authority regarding actual expenditures by agencies. By contrast, an agency may only expend appropriations after the agency has submitted a requisition to the Governor.[16]

Responsibilities of agency heads defined in the statutes must be understood in a constitutional and statutory context wherein Connecticut's structure of government bestows upon the Governor supervisory and budgetary authority, power and control above and beyond those ascribed to agency heads. Thus, while the statutes provide broad authority for an agency head, such as the Defendant Commissioner, regarding operation of the agency, this authority is circumscribed and subject to the authority and power of the Defendant Governor in terms of his superior oversight and supervision of the Commissioner and agency, and his budget-making and expenditure authority.

---

[14]Conn. Gen. Stat. § 4-87(a). When line item transfers exceed the lesser of $50,000 or 10% of specific appropriations, the Governor must seek approval of the Finance Advisory Committee, consisting of the Governor, Lieutenant Governor, the Treasurer, the Comptroller, and two Senate members and three House members. Conn. Gen. Stat. §§ 4-87(a) and 4-93.

[15]Conn. Gen. Stat. § 4-84.

[16]Conn. Gen. Stat. § 4-85.

-8-

## IV.   PLAINTIFFS HAVE STANDING TO BRING THIS ACTION AGAINST THE DEFENDANT GOVERNOR.

"Article III of the U.S. Constitution limits the jurisdiction of federal courts to the resolution of cases and controversies. Standing is an essential and unchanging part of Article III's case-or-controversy requirement." Gully v. Nat'l Credit Admin. Bd., 341 F.3d 155, 161 (2d Cir. 2003) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992)). "Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue." Connecticut v. Physicians Health Servs. of Conn., Inc., 287 F.2d 110, 116 (2d Cir. 2002) (citing Sierra Club v. Morton, 405 U.S. 727, 731-32 (1972)).

"The irreducible constitutional minimum of standing has three requirements." Gully, 341 F.3d at 161 (citing Lujan, 504 U.S. at 559). First, plaintiff must have an "injury in fact." Second, there must be a causal connection between the injury and the challenged conduct of the defendant. Third, it must be likely that the injury is redressable by a favorable decision against the defendant. See Lujan, 504 U.S. at 559 (1992); accord, Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000); Physicians Health Servs. of Conn., 287 F.2d at 116. "Because standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Physicians Health Servs. of Conn., 287 F.2d at 114 (citations omitted; internal

-9-

quotations omitted).

Contrary to the Defendant Governor's assertions, Plaintiffs fully meet the Lujan standing test set forth above, including prongs two and three. *See* Defendant's Memorandum of Law in Support of the Defendant John Rowland's Motion to Dismiss (Defendant's Memorandum), p. 5. ("The Amended Complaint (1) fails to allege any misconduct on behalf of Governor Rowland to which their injury could possibly be traced, and (2) demonstrates that redress can only be achieved by a judgment against the Commissioner of DSS, rather than the Governor, because all of the actions complained of have been delegated to her by the state legislature.").

1. Causal Connection.

Plaintiffs have alleged injury "fairly traceable to the challenged action of the defendant." Lujan, 504 U.S. at 560 (internal quotations omitted). Plaintiffs allege ADA and Rehabilitation Act violations, specifically Defendants' failure to accommodate people with disabilities, exacerbated by the closing of over one-third of DSS offices, reducing staff and increasing caseload to staff ratios. Amended Complaint, ¶¶ 29, 30, 33(e), 34. Plaintiffs further allege that at "[a]ll times relevant herein, Defendant John Rowland was and is the Governor of the state of Connecticut, vested with the supreme executive power of the state. Conn. Const. Art. IV, § 5." Amended Complaint, ¶ 3.

While the Defendant Governor argues that the alleged violations of the ADA and Section 504 of the Rehabilitation Act are all the product of the actions or inactions of Defendant Commissioner and DSS, this contention bypasses his ultimate statutory and constitutional responsibility for the Defendant Commissioner's compliance with

-10-

these federal laws. The relevant duties and authority of the Defendant Governor which demonstrate the causal connection between the Plaintiffs' injuries and his conduct are contained in the constitutional and statutory provisions which create such duties and authority. *See* section III, *supra*.

ADA compliance has become all the more important as DSS rules have changed in the wake of welfare reform, making disability an eligibility criterion in addition to demonstration of need. Increasingly, those qualifying for DSS-administered benefits must be disabled as a condition of eligibility.[17] It is labor intensive to identify these disabilities and assist program applicants and recipients in providing the documentation that DSS requires. Yet, as the eligibility process has become more complex, staffing has decreased substantially. Since this action was filed, over a third of DSS offices have been closed. *See* Defendant's Answer, dated February 20, 2003, ¶ 14, to Complaint, dated January 16, 2003, ¶ 26. Defendants face substantially reduced resources as a result

---

[17]For example, the following benefits all require documentation of disability and/or receipt of disability related benefits or services: State Administered General Assistance (SAGA) cash (Conn. Gen. Stat. §17b-118, as amended by § 97(b) of P.A. 3-03, June 30 Sp. Sess. (amendment effective March 1, 2004) and § 17b-689, as amended by § 46 of P.A. 3-03, June 30 Sp. Sess.); the "exempt" category of Temporary Family Assistance (TFA) (Conn. Gen. Stat. § 17b-112(b)(1) (incapacitated or elderly adult), (2) (needed at home to care for incapacitated person), and (5) (pregnant or postpartum and condition prevents work); State Supplement to the Aged, Blind or Disabled (Conn. Gen. Stat. § 17b-600); Food Stamps for those not subject to work related requirements (7 C.F.R. § 273.7(b)(1)(ii) (unable to work); 7 C.F.R. § 273.7(b)(1)(iv) (meeting care needs of another); 7 C.F.R. §273.7(b)(1)(vi) (participating in addiction program); and 7 C.F.R. § 273.7(*l*) (pending applications for SSI (Supplemental Security Income) with the Social Security Administration); and Medicaid for disabled persons (DSS Uniform Policy Manual §§ 2540.76, 2540.77, 2540.80, 2540.84, 2540.85, and 2540.96).

of budget constraints[18] that make compliance with the ADA and Section 504 of the Rehabilitation Act significantly more difficult.

Again, while the Defendant Governor argues that the alleged violations of the ADA and Section 504 of the Rehabilitation Act are all the product of the actions or inactions of Defendant Commissioner and DSS, this contention bypasses his ultimate statutory and constitutional responsibility for the Defendant Commissioner's compliance with these federal laws. Although Defendant Governor's full factual role in the closing of DSS offices statewide currently remains unclear to Plaintiffs absent further discovery, DSS has admitted that offices were closed due to budget implications.[19] The Defendant Governor's supreme executive power and supervisory responsibility regarding the Defendant Commissioner and DSS, and his role in budget formulation and execution are well established in the statutes and constitution of the State of Connecticut. The Defendant Governor's responsibilities and authority connect him to injuries suffered by Plaintiffs as the intended beneficiaries of programs administered by DSS when such programs are administered in a manner violative of federal law.[20] To the extent policy and protocols must be put in place to remedy such

---

[18]*See* footnote 1, *supra.*

[19]*See* footnote 1, *supra.*

[20]The Defendant Governor cites Conn. Gen. Stat. § 46a-77 in his Motion to Dismiss as an explicit delegation of responsibility to DSS for compliance with the ADA. *See* Defendant's Memorandum, p. 6. This provision merely indicates that agencies must comply with the ADA when the ADA provides rights and protections beyond those in state statute. It in no way supercedes constitutional and statutory authority and responsibilities vested in the Governor.

-12-

violations, and resources sought and directed to ensure such compliance, he is a necessary and therefore appropriate party to the litigation. *See* <u>Rolland v. Celluci</u>, 52 F.Supp. 2d 231, 243 (D.Mass. 1999) (in which the court found the governor was a proper party based on plaintiffs' allegations in their complaint that the governor is responsible for seeking funds from the legislature and for appointing directors of state agencies, as well as directing, supervising, and controlling the executive departments of state government).

    <u>2. Redressability</u>.

    Joinder of a party is mandatory "if in the person's absence complete relief cannot be accorded among those already parties." Fed. R. Civ. P. 19(a). An injunction is binding "only upon the parties to the action, their officers, agents, and upon those persons in active concert or participation with them . . . ." Fed. R. Civ. P. 65(d). *See also* <u>Regal Knitwear Co. v. Nat'l Labor Relations Bd.</u>, 324 U.S. 9 (1945). An injunction against an agent or servant does not control the principal. "By definition, the servant does not control the principal. If the court does not have jurisdiction over the principal, it is not easy to see why the court should have the power to bind her through an order directed against her servant." <u>Doctors' Assoc., Inc. v. Reiner & Duree, P.C.</u>, 191 F.3d 297, 304 (2d Cir. 1999).

> For the same reasons, . . . the mere fact of an employer/employee, master/servant, or principal/agent relationship, without more, does not necessarily satisfy the standard of 'persons in active concert,' at least where the consequence would be to extend the injunction to cover the dominant party. If it did, one would never need to obtain jurisdiction over a principal in order to obtain a binding injunction over her. It would be sufficient to sue and enjoin the agent.

-13-

Id. at 304 n. 5.

Defendant Commissioner serves at the pleasure of the Defendant Governor and acts as the executive officer for the Defendant Governor for accomplishing the purposes of DSS. *See* Conn. Gen. Stat. §§ 4-6 and 4-8. The Defendant Governor has the authority and responsibility to ensure that DSS administers its programs in compliance with federal law. Conn. Gen. Stat. §§ 4-1a, 4-6, and 4-8. Applying principal/agent rules, the state statutory scheme dictates that the Defendant Governor must be seen as the principal, and the Defendant Commissioner as his agent. Thus, an injunctive order against the Defendant Commissioner alone will not bind the Governor. *See* Doctors' Assoc., 191 F.3d at 304.

In the present action, Plaintiffs request injunctive relief that will provide them and the class they seek to represent with the opportunity to access and maintain the benefits of DSS programs and services to which they are entitled. They seek to enjoin Defendants to identify and assess applicants and recipients with disabilities and provide them with reasonable accommodations to ensure program accessibility in compliance with the ADA and Section 504 of the Rehabilitation Act. Amended Complaint, Claims for Relief, ¶ C.1. Such relief may well entail increased staff (*e.g.*, more eligibility workers, trained social workers, or disability ombudsmen), the opening of former offices (now closed), or the maintenance of additional office hours.

The Defendant Commissioner may be enjoined by the Court to directly address this relief. Such a court order against the Defendant Commissioner might be sufficient regarding agency policy, practice and protocols. The Defendant Commissioner,

-14-

however, may reasonably assert that such relief requires additional revenue beyond that presently allotted to DSS in the state budget. The Defendant Commissioner simply lacks budget seeking authority to access this revenue independently and has no power over final budget appropriations. *See* Conn. Gen. Stat. § 4-69 *et seq.* and discussion at section III, *supra*. Plaintiffs seek to ensure adequate funding to enable DSS to comply fully with the requirements of the ADA and Section 504 of the Rehabilitation Act.

Drawing all reasonable inferences in favor of the Plaintiffs, *see* Tyson v. Willauer, 2002 WL 31094951 at *1 (citing Ganino, 228 F.3d at 161), Plaintiffs have demonstrated that they have an injury fairly traceable to the Defendant Governor and that their injuries are redressable by him, and that as such, they have standing as to the Defendant Governor. Accordingly, plaintiffs have demonstrated by a preponderance of the evidence that this Court has subject matter jurisdiction over this action as to the Defendant Governor and that the Defendant Governor's Motion to Dismiss should be denied. *See* B.H. v. Southington Bd. of Educ., 273 F.Supp.2d at 198 (plaintiffs have burden of proving subject matter jurisdiction by a preponderance of the evidence).

## V.    THE DEFENDANT GOVERNOR IS A PROPER PARTY TO THIS ACTION AND AS SUCH, THE ELEVENTH AMENDMENT DOES NOT GRANT HIM IMMUNITY IN THIS ACTION.

The Defendant Governor argues that he is not the proper party in this action, claiming that Plaintiffs have not drawn any connection between the Plaintiffs' injuries caused by violations of the ADA and Section 504 of the Rehabilitation Act and the conduct of the Defendant Governor, and that absent such a connection, he is entitled to

-15-

Eleventh Amendment immunity, requiring Dismissal of this action as to him. *See*

Defendant's Memorandum, pp. 1-5.

The Eleventh Amendment has been interpreted to preclude suits for damages

against state officials in their official capacities. *See* Ex Parte Young, 209 U.S. 123,

150 (1908); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). The Eleventh

Amendment does not prohibit suits against state officials in their official capacities for

prospective injunctive relief to prevent them from violating federal law.[21] *See* Ex Parte

Young, 209 U.S. at 157 (establishing this exception to the Eleventh Amendment,

explaining that the state cannot impart immunity on a state officer committing an illegal

act). *See also* Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645-46

(2002); Henrietta D. v. Bloomberg, 331 F.2d 261, 287 (2d Cir. 2003); Faricelli v.

Holbrook, 215 F.3d 241, 245 (2d Cir. 2000).

The Ex Parte Young exception to the Eleventh Amendment requires:

> In making an officer of the state a party defendant in a suit to enjoin the
> enforcement of an act alleged to be unconstitutional, it is plain that such
> officer must have **some connection** with the enforcement of the act, or
> else it is merely making him a party as a representative of the state, and

---

[21] Ex Parte Young relief against a state official in her official capacity is
available under Title II of the ADA and Section 504 of the Rehabilitation Act. "Neither
§ 504 nor Title II displays any intent by Congress to bar a suit against state officials in
their official capacities for injunctive relief, nor does either create a remedial scheme so
elaborate that it could be thought to preclude relief under Ex Parte Young." Henrietta
D. v. Bloomberg, 331 F.3d 261, 289 (2d 2003). Moreover, the Eleventh Amendment is
specifically waived as a condition of accepting federal funds under Section 504 of the
Rehabilitation Act, *see* 42 U.S.C. § 2000d-7(a)(1). *See also* Bruggeman v. Blagojevich,
324 F.3d 906, 912 (2d Cir. 2003) (upholding the constitutionality of 42 U.S.C. § 2000d-
7(a)(1)). In this discussion of Ex Parte Young, Plaintiffs assert that the Governor is a
proper party not only because of this express waiver, but because he is sufficiently
connected to the challenged actions to warrant his inclusion.

-16-

thereby attempting to make the state a party.

Ex Parte Young, 209 U.S. at 157 (emphasis added.). The level of connection between

the state official and enforcement of the challenged act contemplated by the Supreme

Court in Ex Parte Young is minimal.  The Supreme Court explicated further: "The fact

that the state officer, by virtue of his office, has some connection with the enforcement

of the act, is the important and material fact, and whether [this connection] arises out of

general law, or is specially created by the act itself, is not material *so long as it exists*."

Ex Parte Young, 209 U.S. at 157 (emphasis added).

> Young . . . allows the 'special charge' to be drawn implicitly from the
> laws of the state, rather than requiring that it be stated explicitly in the
> challenged statute. . . no special charge need be found directly in the
> challenged statute to meet the requisite 'some connection' so long as
> there is *sufficient indicia* of the defendant's enforcement powers found
> elsewhere in the laws of the state.

Okpalobi v. Foster, 244 F.3d 405, 419 (5th Cir. 2001) (concurring opinion) (emphasis

added).  *See also* Women's Emergency Network v. Bush, 214 F. Supp.2d 1316, 1317

(S.D. Fla. 2002) ("Personal action by defendants individually is not a necessary

condition of injunctive relief against state officers in their official capacity. All that is

required is that the official be responsible for the challenged action.").

Moreover, "a court need only conduct a straightforward inquiry into whether the

complaint alleges an ongoing violation of federal law and seeks relief properly

characterized as prospective. . . . The  inquiry into whether suit lies under Ex Parte

Young does not include an analysis of the merits of the claim." Verizon Md Inc., 535

U.S. at 645-46. The question that arises is whether the Defendant Governor has "some

-17-

connection" to conduct alleged in Plaintiffs' complaint. Id.

To withstand a motion to dismiss, Plaintiffs need not prove actual involvement in the challenged conduct, but rather must allege a sufficient connection to the action based on the state official's duties and responsibilities. For example, in Boudreau v. Ryan, 2001 WL 840583, *6 (N.D. Ill. 2001), the court refused to dismiss the case as to the governor where the full extent of the governor's duties with regard to Medicaid Act were unclear but some role was alleged.  In Rolland v. Celluci, 52 F.Supp. 2d 231, 243 (D.Mass. 1999, the court denied the governor's motion to dismiss because plaintiffs established a sufficient connection to enforcement of the Medicaid Act by alleging the governor's responsibility to appoint directors of state agencies, his role in directing, supervising and controlling the executive departments of state government, and his responsibility to seek funds from the legislature. In Confederated Tribes & Bands of the Yakama Indian Nation v. Locke, 176 F.3d 467 (9th Cir. 1999), the case as to the governor was dismissed on Eleventh Amendment grounds because the complaint contained no allegations as to the governor's involvement in the operation of the state lottery. State statutes further demonstrated that operation of the lottery was explicitly outside of the duties and responsibilities of the governor and was bestowed entirely upon an independent commission.  In the present action, Plaintiffs have alleged that the Defendant Governor has supreme executive power, which encompasses his supervisory role over Defendant Commissioner's ADA compliance and his role in budget implementation and appropriations.  These allegations establish sufficient connection to the ongoing violations of the ADA and Section 504 of the Rehabilitation Act raised by

-18-

Plaintiffs in their complaint.

The cases cited by the Defendant Governor in support of his motion are factually inapposite to the present case. *See* Defendant's Memorandum, pp. 2 - 4. The essence of the Plaintiffs' claim is one of pattern and practice and injury arising from ongoing violations of federal law. Plaintiffs seek compliance with the ADA and Section 504 of the Rehabilitation Act. Plaintiffs do not seek to enjoin the governor from enforcing an unconstitutional act as in Warden v. Pataki, 35 F.Supp.2d 354, aff'd 201 F.3d 430 (2d Cir. 1999) (holding, "a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute," and thus dismissing plaintiffs' claim against Governor Pataki whose only alleged involvement in the method of selecting members of the city board of education was his state constitutional duty to "take care that the laws are faithfully executed"). *See also* Women's Emergency Network v. Bush, 214 F. Supp.2d 1316 (S.D. Fla. 2002) (granting motion to dismiss the governor because, by state statute, the governor and his six person Cabinet shared responsibility equally as department head and the executive director of the department was charged with the overall duty and responsibility for the operation of the department); Okpalobi v. Foster, 244 F.3d at 422 (en banc)(Jolly, C.J.) (finding no *Ex Parte Young* exception to Eleventh Amendment because there was no enforcement connection between the Governor and the Attorney General under the challenged statute).

As discussed in section III, *supra*, the Defendant Governor has primary responsibility for ADA compliance and for budget formulation and execution, thereby

-19-

establishing the causal connection required under the Ex Parte Young doctrine. *See*

Rolland v. Celluci, 52 F.Supp. 2d at 243. Plaintiffs request injunctive relief that will

provide them and the class they seek to represent with the opportunity to access and

maintain the benefits of DSS programs and services to which they are entitled. They

seek to enjoin Defendants to identify and assess persons with disabilities and provide

them with reasonable accommodations to ensure program accessibility in compliance

with the ADA and Section 504 of the Rehabilitation Act. Amended Complaint, Claims

for Relief, ¶ C.1. Such relief may well entail increased staff, the opening of former

offices (now closed), or the maintenance of additional office hours. The Defendant

Commissioner may be enjoined by the Court to directly address this relief. Such a court

order against the Defendant Commissioner might be sufficient regarding agency policy,

practice and protocols. The Defendant Commissioner, however, may reasonably assert

that such relief requires additional revenue beyond that presently allotted to DSS in the

state budget. The Defendant Commissioner simply lacks budget seeking authority to do

so independent of the Defendant Governor and has no power over final budget

appropriations. *See* Conn. Gen. Stat. § 4-69 *et seq.* and discussion at III, *supra*.

Plaintiffs seek to ensure adequate funding to enable DSS to comply fully with the

requirements of the ADA and Section 504 of the Rehabilitation Act.

Given that the case against the Defendant Governor falls squarely within the Ex

Parte Young exception to the Eleventh Amendment, immunity should not be found in

the present case. The Governor is a proper party to this action, without whom proper

relief may not be obtained. Accordingly, the Defendant Governor's motion to dismiss

should be denied.

## IV. CONCLUSION

For all of the foregoing reasons, Defendant Governor's motion to dismiss as to himself should be denied.

Respectfully Submitted,
PLAINTIFFS

By: _____

JOANNE G. GIBAU (ct 05730)
New Haven Legal Assistance
426 State St.
New Haven, CT 06510
(203) 946-4811, ext. 142
(203) 498-9271 (fax)
jgibau@nhlegal.org

SHIRLEY BERGERT (ct 09328)
Connecticut Legal Services
872 Main St., PO Box 258
Willimantic, CT 06226
(860) 456-1761, ext. 115
(860) 456-7420 (fax)
sbergert@connlegalservices.org

LUCY POTTER (ct 23449)
Greater Hartford Legal Aid
999 Asylum Ave., 3rd floor
Hartford, CT 06105
(860) 541-5002
(860) 541-5050
lpotter@ghla.org

GREG BASS (ct 18114)
Greater Hartford Legal Aid
999 Asylum Ave., 3rd Floor
Hartford, CT 06105
(860) 541-5018
(860) 541-5050 (fax)
gbass@ghla.org

MARIA MORELLI-WOLFE (ct 23174)
Greater Hartford Legal Aid
999 Asylum Ave., 3rd Floor
Hartford, CT 06105
(860) 541-5042

-22-

(860) 541-5050 (fax)
mmorelliwolfe@ghla.org

THEIR ATTORNEYS

## CERTIFICATION

I hereby certify that a copy of the foregoing Plaintiffs' Opposition was mailed in

accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 31st day of

October 2003, first class postage prepaid to:


Hugh Barber
Peter L. Brown
Richard J. Lynch
Assistant Attorneys General
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120

Joanne Gibau
Attorney for the Plaintiffs

-23-