UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORI RAYMOND, *et al.*, | : | CIVIL ACTION NO. 303 CV 0118 MRK |
|     Plaintiffs, | : | |
|     Individually and as | : | |
|     persons similarly situated, | : | |
| | : | |
| VS. | : | |
| | : | |
| JOHN ROWLAND, Governor of | : | |
| Connecticut, PATRICIA | : | |
| WILSON-COKER, Commissioner | : | March 5, 2004 |
| of the Connecticut Department of | : | |
| Social Services, | : | |
| In their official capacities, | : | |
|     Defendants. | : | |

## MOTION TO INTERVENE SUNDRA EVANS

Intervenor, Sundra Evans, hereby incorporates the allegations, causes of action and claims for relief set forth in the named Plaintiffs' Seconded Amended Complaint, filed with the Court on February 23, 2004, and adds the following:

1. Sundra Evans is thirty years old and resides in Groton, Connecticut.

2. She moved from Colorado to Connecticut in October 2003 to escape domestic violence. She has an eight-year-old daughter.

3. In September 2000 Ms. Evans was in a car accident. As a result of this car accident she has: five rotated vertebra in her spine; a slipped vertebrae in her neck; six dislocated ribs and a rotated pelvis; damage to her left rotator cuff; damage to her left hip causing her left leg to be shorter than her right leg; and traumatic brain injury (TBI). As a result of the TBI she has problems with short

    term memory.  Additionally, she has a fistula in her left ear causing a balance disorder, chronic nausea, vomiting and vertigo. She also suffers from post traumatic stress disorder, depression, migraine headaches and a sleep disorder.

4. As a result of her disabilities, Ms. Evans cannot walk or stand for more than 10 minutes at a time.  It is difficult for her to do housework without outside help. She is able to grocery shop only if the facility can provide her with a motorized scooter.  She is no longer able to pursue hobbies.  She has some mood swings and at times gets no more than one or two hours of sleep a night because of the pain caused by her injuries and her mental health issues.

5. When she left Colorado, Ms. Evans was taking the following medications: Phenergan, Paxil, Topamax, Meclizine, Percocet, Prilosec, Vallium, Seroquel and Maxzide.

6. Ms. Evans mailed an application to the Connecticut Department of Social Services (DSS), for cash assistance, food stamps, and Medicaid in late December 2003.

7. She called DSS at least six times between late December 2003 and the middle of February 2004 to inquire about the status of her application. Her calls were not returned.

8. On February 12, 2004, Ms. Evans contacted the HUSKY Info Line and spoke to a HUSKY Info Line representative.  On February 13, 2004, the HUSKY Info Line representative called Ms. Evans and conference-called a DSS worker. The HUSKY Info Line representative explained to the DSS worker that Ms. Evans'

    case was an emergency - she had run out of medications. The DSS worker responded that all the cases he dealt with were emergencies. The HUSKY Info Line representative repeatedly asked the DSS worker to transfer the call to a DSS supervisor. The DSS worker refused to do so and said he could not help.

9. On February 22, 2004, Ms. Evans and the HUSKY Info Line representative were able to speak to a DSS supervisor. On that day, the DSS supervisor told Ms. Evans that DSS received her application on February 21, 2004. There was no explanation for DSS's delay in receipt of the application for assistance. The DSS supervisor told Ms. Evans that her Medicaid was "activated."

10. Ms. Evans tried to refill her prescriptions on that date and several times after. The pharmacist repeatedly told Ms. Evans that she was not in the DSS system and he could not refill the prescriptions.

11. Ms. Evans repeatedly called DSS because of her need for medications. Her calls were not returned.

12. Ms. Evans did not have her DSS worker's direct extension and was often required to leave a message in the general mailbox. This mailbox was often full and she was unable to leave messages on these occasions.

13. When she eventually spoke to her DSS worker about her prescriptions, Ms. Evans was told that she was in the DSS system and that there was nothing more that DSS could do to help her.

14. Ms. Evans also asked her DSS worker about expedited food stamps because she had no income. She was told that Connecticut does not process expedited food

stamps so these benefits were not provided to her.

15. On February 23, 2004, Ms. Evans received an application verification list from DSS. DSS asked her to provide eight types of verification with a deadline of that same day, February 23, 2004. After several phone calls to DSS, she was able to get an extension until March 3, 2004. She had run out of all her medication by the end of December 2003. Without her medication, Ms. Evans was suffering from severe pain and migraines and her disabilities precluded her from getting the DSS required verifications without assistance. Ms. Evans asked her DSS worker to assist her in obtaining the verifications. The DSS worker refused.

16. On March 3, 2004, Ms. Evans contacted Connecticut Legal Services, Inc. Shortly after counsel contacted DSS regarding Ms. Evans' inability to access Medicaid benefits, the pharmacist was then able to refill her prescriptions for Percocet, Phenergran, Paxil, Topamax and Seroquel. He could not refill Ms. Evans' prescriptions for Meclazine, Prilosec, and Maxzide because the prescriptions had expired. Meclazine is used to treat her vertigo, Prilosec to treat ulcers, and Maxzide is a diuretic that helps drain liquid out of Ms. Evans' ear. If Ms. Evans' Medicaid had been activated in February 2004, those prescriptions could have been timely refilled. She now has to wait until March 9, 2004 to see a doctor to obtain new prescriptions.

17. Ms. Evans was also told by a DSS worker that she was required to attend a face-to-face interview at the Norwich DSS office before DSS would grant cash or food stamp assistance. Ms. Evans told the worker that she is disabled and cannot

drive. Additionally, she cannot take public transportation because of her disabilities. The DSS worker told Ms. Evans that she would have to figure out a way to get to the office in Norwich and offered her no other option.

18. To date, DSS has not informed Ms. Evans of her right to reasonable accommodations under the Americans with Disabilities Act (ADA), 42 U.S.C. §12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. §701 and §794, and implementing regulations, nor has Ms. Evans been offered any such reasonable accommodations.

19. Intervenor Evans is a member of the proposed Plaintiff class. The proposed definition of the Plaintiff class is all individuals with disabilities in Connecticut who are or will be eligible for subsistence benefits through programs administered by DSS, and whose meaningful access to such subsistence benefits, programs and services has been, is being, or will be denied or effectively limited by Defendants, due to their continuing failure or refusal to provide reasonable accommodations to those individuals.

20. Intervenor Evans' claims and the main action have questions of fact and law in common, including :

(a) whether Defendants' actions or inactions violate the rights of Intervenor Evans, as a qualified disabled person eligible for DSS benefits, programs and services, under the Americans with Disabilities Act (ADA), 42 U.S.C. §12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. §701 and §794, and implementing regulations;

(b) whether the Defendants have denied or effectively limited Intervenor Evans' meaningful access to subsistence benefits administered by DSS;

(c) whether the Defendants have failed to provide Intervenor Evans with reasonable accommodations she has needed and continues to need in order to obtain and maintain access to essential DSS benefits, programs and services;

(d) whether the Defendants have failed to provide Intervenor Evans with adequate notice of and information regarding ADA nondiscrimination requirements in the operation of DSS benefits, programs and services pertaining to disabled applicants and recipients of such benefits, programs and services; and

(e) whether the Defendants have failed to afford Intervenor Evans an opportunity to file grievances and obtain relief pursuant to the ADA and Section 504 of the Rehabilitation Act, when her rights as a disabled person have been violated by DSS due to the Defendants' failure to adopt , publish, provide notice of, and implement appropriate grievance procedure.

## **PRAYER FOR RELIEF**

WHEREFORE, Intervenor Sundra Evans respectfully prays that this Court will:

1. Grant her motion to intervene;

2. Assume jurisdiction of her Intervenor's claim, as part of the ongoing action; and

3. Accord her the relief otherwise granted to named Plaintiffs and members of the proposed class.

RESPECTFULLY SUBMITTED,

Intervenor, Sundra Evans


_____
BY: /s/Priya Sinha Cloutier (ct20598)
Connecticut Legal Services, Inc.
153 Williams Street
New London, CT 06320
Phone: 860.447.0323 x.112
Fax: 860.443.0109
E-Mail: pcloutier@connlegalservices.org
Her Attorney


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Intervenor Complaint of Sundra Evans was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 5th day of March 2004, first class postage prepaid to:

Hugh Barber, Esq.
Peter Brown, Esq.
Richard J. Lynch, Esq.
Assistant Attorneys General
Office of the Attorney General
55 Elm St., P.O. Box 120
Hartford, CT 06141-0120


_____
/s/Priya Sinha Cloutier