UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORI RAYMOND, *et al.*, | : | CIVIL ACTION NO.  303 CV 0118 MRK |
|     Plaintiffs, | : | |
|     Individually and as | : | |
|     persons similarly situated, | : | |
| | : | |
| VS. | : | |
| | : | |
| JOHN ROWLAND,   Governor of | : | |
| Connecticut, PATRICIA | : | |
| WILSON-COKER, Commissioner | : | March 5,  2004 |
| of the Connecticut  Department of | : | |
| Social Services, | : | |
| In their official capacities, | : | |
|     Defendants. | : | |

### MEMORANDUM IN SUPPORT OF SUNDRA EVANS' MOTION TO INTERVENE

**I. INTRODUCTION**

      Proposed Intervenor, Sundra Evans, herein files this memorandum in support of  her Motion to Intervene, pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

**II.  STATEMENT OF FACTS**

      Ms. Evans is thirty years old and indigent. As a result of a car accident in 2000, Ms. Evans has five rotated vertebra in her spine; a slipped vertebrae in her neck; six dislocated ribs and a rotated pelvis; damage to her left rotator cuff; damage to her left hip causing her left leg to be shorter than the right; and traumatic brain injury (TBI).  As a result of the TBI, Ms. Evans has problems with short term memory.  Additionally, she has a fistula in her left ear causing a balance disorder, chronic nausea, vomiting and vertigo.  She also suffers from post traumatic stress disorder, depression, migraines and a sleep disorder.

As a result of her disabilities, Ms. Evans cannot walk or stand for more than 10 minutes at a time. She cannot do housework without outside help. Ms. Evans can grocery shop only if the facility can provide her with a motorized scooter. Additionally, Ms. Evans has some moods swings and at times gets no more than one or two hours of sleep a night because of the pain caused by her injuries and her mental health issues.

Ms. Evans and her daughter moved to Connecticut in October 2003 to escape domestic violence. When Ms. Evans moved to Connecticut, she had a little money saved and with help from a friend in Norwich she was able to live without cash assistance, food stamps and Medicaid until December 2003. In December 2003, Ms. Evans mailed an application to the Department of Social Services (DSS) applying for cash assistance, food stamps and Medicaid. Ms. Evans called DSS at least six times between late December 2003 and the middle of February 2004 to inquire about the status of her application. Her calls were not returned

On February 12, 2004, Ms. Evans contacted the HUSKY Info Line. On February 13, 2004, The HUSKY Info Line representative conference-called Ms. Evans and a worker at DSS and repeatedly asked the DSS worker to transfer the phone to a supervisor. Even when the HUSKY Info Line representative explained to the DSS worker that Ms. Evans' case was an emergency because she was out of needed medication, he refused to let Ms. Evans speak with a supervisor. The DSS worker told Ms. Evans that he could not help her.

On February 22, 2004, Ms. Evans and the HUSKY Info Line worker were able to speak to a DSS supervisor. On that day, the DSS supervisor told Ms. Evans that DSS had received her application on February 21, 2004. The supervisor claimed to have activated Ms. Evans' Medicaid. On that day and several times after, Ms. Evans tried to refill prescriptions. Her

pharmacist repeatedly told her that she was not in the DSS system and he could not refill her prescriptions.

Ms. Evans repeatedly called DSS, but her calls were not returned. She did not have her DSS worker's direct extension and was often required to leave a message in the general mail box. This mailbox was often full so she could not leave a message.

When Ms. Evans was eventually able to speak with her DSS worker about her prescriptions, she was told that she was in the DSS system and that there was nothing more that DSS could do to help. Ms. Evans also asked about expedited food stamps as she had no income and was told that Connecticut does not process expedited food stamps.

On February 23, 2004, Ms. Evans received an application verification list from DSS. DSS asked her to provide eight types of verification with a deadline of that date, February 23, 2004. After Ms. Evans made several phone calls to DSS, she was able to get an extension until March 3, 2004. She had run out of all medications by late December 2003. Without the medications she was suffering from severe pain and migraine headaches, limiting her ability to obtain verification required by DSS without assistance. She asked her DSS worker to help her acquire the needed verification, but the worker refused.

On March 3, 2004, Ms. Evans contacted Connecticut Legal Services, Inc. Shortly after counsel contacted DSS regarding Ms. Evans' inability to access Medicaid benefits, the pharmacist was able to refill her prescriptions for Percocet, Phenergran, Paxil, Topamax, and Seroquel. However, the pharmacist could not refill her prescriptions for Meclizine, used to treat her vertigo, Prisolec, used to treat her ulcer, and Maxzide, a diuretic used to treat fluid build-up in her ear. These prescriptions had expired. If Ms. Evans' Medicaid had been activated in

February 2004, these prescriptions could have been timely refilled. Ms. Evans must now wait until March 9, 2004 to see a doctor to obtain new prescriptions.

Ms. Evans was also told by her worker that she would have to go to the DSS office in Norwich for a face-to-face interview. Ms. Evans told her worker that she is disabled and could not drive. Additionally, Ms. Evans told the worker that her disabilities prevented her from using public transportation. Ms. Evans was told that she would have to figure out a way to get to the office in Norwich. Ms. Evans was not offered any other option.

To date, DSS has not informed Ms. Evans of her right to reasonable accommodations under the under the Americans with Disabilities Act (ADA), 42 U.S.C. §12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. §701 and §794, and implementing regulations, nor has Ms. Evans been offered reasonable accommodations.

**III. ARGUMENT**

PROPOSED INTERVENOR SUNDRA EVANS MEETS THE CRITERIA FOR PERMISSIVE INTERVENTION UNDER RULE 24(B)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Intervenor Evans, like the other named Plaintiffs in the above-referenced action, is indigent and a qualified disabled person eligible for benefits, programs and services provided by the DSS. Like the other named Plaintiffs, Intervenor Evans' disabilities substantially limit her ability to engage in major life activities, as defined under 28 C.F.R.§ 35.104. Intervenor Evans has serious limitations in her ability to travel and perform physical activities, and her limitations are compounded by problems with short-term memory, depression, migraine headaches and sleep deprivation. She needs assistance coordinating her benefits and obtaining verification to

demonstrate eligibility. Furthermore, it is almost impossible for Ms. Evans to attend a face-to-face interview at the Norwich DSS office. Without these accommodations Ms. Evans does not have meaningful access to DSS-administered cash assistance, food stamps, or Medicaid.

Intervenor Evans meets the criteria for permissive intervention under Rule 24(b)(2). She presents claims that "have a question of law or fact in common" with "the main action." *Id.* Specifically, Intervenor Evans presents the following common questions of law and fact :

(a) whether Defendants' actions or inactions violate the rights of Intervenor Evans, as a qualified disabled person eligible for DSS benefits, programs and services, under the Americans with Disabilities Act (ADA), 42 U.S.C. §12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. §701 and §794, and implementing regulations;

(b) whether the Defendants have denied or effectively limited Intervenor Evans meaningful access to subsistence benefits administered by DSS;

(c) whether the Defendants have failed to provide Intervenor Evans with reasonable accommodations she has needed and continues to need in order to obtain and maintain access to essential DSS benefits, programs and services;

(d) whether the Defendants have failed to provide Intervenor Evans with adequate notice of and information regarding ADA nondiscrimination requirements in the operation of DSS benefits, programs and services pertaining to disabled applicants and recipients of such benefits, programs and services; and

(e) whether the Defendants have failed to afford Intervenor Evans an opportunity to file grievances and obtain relief, pursuant to the ADA and Section 504 of the Rehabilitation Act, when her rights as a disabled person have been violated by DSS due to the

Defendants' failure to adopt, publish, provide notice of, and implement appropriate grievance procedures.

In the absence of relief from this Court, Intervenor Evans has been unable to timely obtain Medicaid coverage, cash assistance, and food stamps, which she needs. The Defendants must be ordered to reasonably accommodate her disabling conditions, in the form of affirmative, timely assistance in establishing her eligibility for these benefits.

Intervenor Evans is a member of the proposed Plaintiff class. The definition of the proposed Plaintiff class is all individuals with disabilities in Connecticut who are or will be eligible for subsistence benefits through programs administered by DSS, and whose meaningful access to such subsistence benefits, programs and services has been, is being, or will be denied or effectively limited by Defendants, due to their continuing failure or refusal to provide reasonable accommodations to those individuals. Any order entered by the Court concerning the Defendants' obligations to accommodate disabled persons will affect Ms. Evans in the same manner it affects the other named Plaintiffs and the members of the Plaintiff class.

In light of Intervenor Evans' needs for DSS benefits, if intervention is denied, Intervenor Evans would likely be required to file a separate action to ensure protection of her interests, needlessly burdening the Court with an additional lawsuit. Such a step would be inefficient, and would risk confusion and inconsistent or varying adjudications with respect to the issues now before it.

Under Rule 24(b), Ms. Evans need not show a complete identity of facts and law in common with the claims of the other parties in this action in order to intervene. Rather, she must show only "*a* question of law *or* fact in common." [emphasis added]. Ms. Evans meets this

standard for permissive intervention. She will be able to serve as an additional named Plaintiff for the litigation, contributing to the Court's understanding of the nature and extent of the Defendants' ongoing failure to provide accommodations to disabled persons who need such accommodation for meaningful access to DSS benefits, programs and services, in violation of the Americans With Disabilities Act (ADA), 42 U.S.C. §12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. §701 and §794, and implementing regulations.

**IV. CONCLUSION**

For the reasons stated above, Intervenor Sundra Evans respectfully requests that the Court permit her to intervene as a party Plaintiff at this time.

RESPECTFULLY SUBMITTED,

Intervenor, Sundra Evans

_____
BY: /s/Priya Sinha Cloutier (ct20598)
Connecticut Legal Services, Inc.
153 Williams Street
New London, CT 06320
Phone: 860.447.0323 x.112
Fax: 860.443.0109
E-Mail: pcloutier@connlegalservices.org
Her Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Memorandum In Support of Sundra Evans' Motion to Intervene was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 5th day of March 2004, first class postage prepaid to:

Hugh Barber, Esq.
Peter Brown, Esq.
Richard J. Lynch, Esq.
Assistant Attorneys General
Office of the Attorney General
55 Elm St., P.O. Box 120
Hartford, CT 06141-0120

                                        _____
                                        /s/Priya Sinha Cloutier