UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORI RAYMOND, et al., | : | |
| | : | |
| Plaintiffs, | : | NO.   3:03cv0118 (MRK) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN ROWLAND, et al., | : | |
| | : | |
| Defendants. | : | |

**ORDER**

In this action, Plaintiffs claim that Defendants have failed reasonably to accommodate disabled individuals who require or seek essential services from the Connecticut Department of Social Services (DSS), in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. §701, *et seq.*, and federal and state law. Currently before the Court is Plaintiff's Amended Motion for Class Certification [doc. #24]. Because the Plaintiffs meet the requirements for class certification set out in Rule 23 of the Federal Rules of Civil Procedure, the motion is GRANTED.

**I.**

DSS administers the following programs: State Supplement to the Aged, Blind, or Disabled (AABD; cash assistance for impoverished elderly and disabled persons), Temporary Family Assistance (TFA; cash assistance for impoverished families with children or pregnant women), State Administered General Assistance (SAGA; cash and medical assistance), Food Stamps (food coupons

for impoverished persons) and Medicaid (medical assistance for impoverished recipients of cash assistance programs, children and disabled persons). Am. Compl. [doc. #23] ¶4. State regulations require applicants for and beneficiaries of the TFA, SAGA, and Food Stamp programs to have face-to-face interviews at least once every twelve months, with waivers available under limited circumstances. *Id.* ¶31; (citing DSS Uniform Policy Manual (UPM) §§1505.30.B, 1545.20.B, 1545.10.B through E, 1545.11, 8080.15.F, 8520.05.E, 8520.10). Failure to participate in the interview process in the absence of a waiver results in denial or termination of benefits. *Id.*; (citing UPM §§1505.30.G, 1545.20.E, 8080.10.E, 8520.10). There is no codified procedure governing waivers, which must be requested and are available only upon agency discretion. *Id.* ¶31.

On or about January 17, 2003, the State closed six DSS offices, those in Ansonia, Bristol, Meriden, Norwalk, Killingly, and Willimantic, representing over one-third of the offices in the state. Persons served by the closed offices were transferred to other DSS offices throughout the state. *Id.* ¶29. Plaintiffs also assert that DSS has reduced staff throughout the state, resulting in caseloads too high for DSS workers to consistently and timely provide accommodations to disabled applicants and beneficiaries, resulting in delays in processing benefits and the denial of benefits. *Id.* ¶30, 34.

Plaintiffs allege that "Defendants have failed to adopt and codify policies and procedures to accommodate disabled persons in accessing and maintaining eligibility for benefits, programs, and services offered by DSS." *Id.* ¶32. Plaintiffs specify: "Defendants do not have an adequate transition plan in place regarding office closings, nor codified policies and procedures to ensure Plaintiffs and members of the Plaintiff class will be able to access the DSS office to which they are assigned. Neither do Defendants have policies and procedures to ensure that program-eligible disabled persons are reasonably accommodated, if necessary, in a manner that ensures they have an opportunity to

meaningfully access DSS administered benefits, programs and services, equal to that of non-disabled persons." *Id.* ¶33.[1] Furthermore, Plaintiffs claim that Defendants have failed to provide Plaintiffs with adequate notice and information regarding the nondiscrimination requirements of the ADA[2] and §504 of the Rehabilitation Act[3] and that Defendants have further failed to adopt appropriate grievance procedures that would allow Plaintiffs to file grievances and obtain appropriate relief when and if their rights under the ADA and Rehabilitation Act are violated. *Id.* ¶¶35, 36.

The Amended Complaint includes the specific claims of several named plaintiffs. The first named Plaintiff, Lori Raymond, is a resident of Meriden, Connecticut and is disabled by depression, panic disorder, and anxiety. She receives Social Security Disability Insurance benefits, and AABD, Food Stamps, and Medicaid through DSS. Second Am. Compl. [doc. #61], ¶5. Ms. Raymond was served by the Meriden office before it closed, and was reassigned to the New Haven office, which she alleges to be a sixty mile round trip from her residence. *Id.* ¶24.[4] She has no personal

---

[1] The Supreme Court has ruled that under the Rehabilitation Act, "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers. The benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

[2] Title II of the ADA provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

[3] Section 504 provides: "No otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance  29 U.S.C. § 794(a).

[4] Defendants argue that the distance is only thirty nine miles round trip. Defs' Mem. in Opp'n to Pls' Am. Mot. for Class Certification [doc. #29], at 4. The Court need not resolve this

transportation, she cannot use public transportation because of her disabilities, and she has no other means of getting to New Haven for appointments at the DSS office. *Id.*

Ms. Raymond alleges that her psychiatric condition has been exacerbated by her reassignment to the New Haven office, as her case management worker has been changed twice, and she has had difficulty reaching the DSS worker by telephone. *Id.* ¶25. These difficulties resulted in delays in her approval for Qualified Medicare Benefits. *Id.* Ms. Raymond notes that there is no disability indicator on her DSS case, nor in her computer file, essentially leaving DSS no way of knowing that she is disabled and requires special accommodations. *Id.* ¶26.

Migdalia Mendez is a resident of Meriden, and is a disabled single parent of two disabled children. *Id.* ¶27. Ms. Mendez and her younger son receive Supplemental Security Income, the older son receives TFA, and they all receive Medicaid and sometimes Food Stamps, depending on whether they receive child support. *Id.* She is disabled by severe lupus, a herniated disk, and esophagus and stomach problems, all of which limit her mobility and require her to take at least 14 medications every day. She does not have a car and cannot use a bus. Because of the medical needs of her children, she cannot be away from home for extended periods. *Id.*

During the year prior to its closing, Ms. Mendez had to attend appointments at the Meriden DSS office three or four times. She has been reassigned to New Haven, and is unable to get there. Even if she could, her younger son could not make the trip because of his disabilities. *Id.* In the past year, she claims that on at least two occasions DSS made errors in determining her eligibility for benefits. *Id.* ¶¶28, 29. Again, there is no notation in her file that she is disabled. *Id.* ¶30.

Kimberly Dade and her seven-year-old daughter are disabled residents of Bristol. Ms. Dade

---

question at this time.

receives TFA, Food Stamps, and Medicaid through DSS, and has a pending application with the Social Security Administration for disability benefits. *Id.* ¶31. Ms. Dade suffers from chronic bronchial asthma complicated by allergies, morbid obesity, high blood pressure, a prolapsed bladder and urinary and fecal incontinence, tendinitis in her wrist, damaged ankle and knee joints, and circulatory problems in her legs that cause swelling. *Id.* Before the closure of the Bristol DSS office, she visited that office for redeterminations of eligibility every three to six months and often other times as well to supply required documentation. She has no personal transportation and her disability precludes her from using public transportation to get to her newly assigned DSS office in New Britain. *Id.*

Because of her health issues, Ms. Dade has a variable work history, resulting in a need for regular adjustment of her Food Stamps benefits. She was able to visit the Bristol office regularly to produce documentation of her income, but has been unable to get to DSS's New Britain office. Ms. Dade alleges that as a result of these difficulties, her request for adjustment of Food Stamp benefits was initially denied, then retroactively granted, and later terminated when she could not attend a redetermination hearing. Following her attorney's intervention, Ms. Dade's benefits were reinstated. *Id.* Since the commencement of this suit, DSS has sent a social worker to Ms. Dade's house to assist with paperwork and with the securing the medical documentation needed for ongoing eligibility. *Id.* ¶32.

Mary Pavlik is 69 years old and blind, and is a resident of Rowayton, which is a part of Norwalk. *Id.* ¶33. Her sole income is Social Security benefits. She cannot use a cane or a seeing eye dog because of balance problems, and cannot go out alone or use public transportation alone. When this case was filed, she was served by the Norwalk DSS office, where she applied for Medicaid

coverage in January 2003. Following the closing of the Norwalk office, she was assigned to the Bridgeport office, which is approximately 40 miles round trip from her house. While she did have assistance in going to the Norwalk office, she has no one who could assist her to travel to the Bridgeport office. *Id.* Ms. Pavlik also needs assistance in communicating with DSS and reading and responding to her mail, for which she relies on two community volunteers. *Id.* Owing in part to her difficulties in communicating with DSS, her eligibility for Medicaid was not processed properly or promptly, resulting in the rejection of coverage of her pharmacy bills by DSS. Ms. Pavlik claims that this situation was only resolved following the inception of this lawsuit. *Id.*

Darryl Paulding is disabled and unable to work due to depression and learning disabilities. *Id.* ¶34. He lives in Norwalk and receives Supplemental Security Income, AABD, and Food Stamps. He cannot read or write, is unable to read train or bus schedules, and is uncomfortable traveling due to his depression and medications. In the past, he was served by the Norwalk DSS office. Now, Mr. Paulding must travel to DSS's Bridgeport office. However, he does not own a car or know anyone who could drive him there. Even if he were allowed to handle all DSS matters through the mail, he would be unable to do so because of his inability to read or write well enough to fill out the requisite forms. *Id.*

Terri Keaton is a single parent of two children, a teenage son and a three-year-old daughter with Kawasaki disease, a chronic health problem requiring ongoing care. *Id.* ¶35. Ms. Keaton was employed at the inception of this case, though she has disabling problems with her feet that require surgery, with one foot infected and requiring an air cast. *Id.* She often needs crutches and cannot remain on her feet for long periods or walk long distances. She is a resident of Willimantic, and receives Medicaid, requiring trips to the DSS office two or three times per year. Though she has a

car, she cannot drive long distances because of the problems with her feet, and is also precluded by her disabilities from taking public transportation to the DSS office in Norwich to which she was reassigned after her previous office in Willimantic was closed. She is also afraid to be far from her daughter for a long period in case the Kawasaki disease causes her daughter to become ill. Ms. Keaton has been unable to obtain assistance from DSS in locating a Medicaid provider that can treat her foot problems despite repeated requests. She is concerned that her foot problems are causing her to walk abnormally, resulting in problems with her back which could result in total disability. *Id.*

Elmore Sweet is disabled, is on oxygen 24 hours a day, is diabetic, has blood clots in his leg causing him severe pain, and is obese. *Id.* ¶36. He receives Social Security Disability Insurance and Food Stamps and Medicaid through DSS. His disabilities limit his mobility and he uses a wheelchair to get around as he needs to rest his leg regularly. He does receive assistance from a homemaker and an aide for his daily living needs, maintaining personal hygiene, preparing food, cleaning his apartment, and shopping. *Id.* He resides in Willimantic and was served by the DSS office there, but is now assigned to the DSS office in Norwich, which is approximately forty miles from his home. He asserts that he cannot use public transportation or the Dial-a-Ride service because their vehicles cannot accommodate his wheelchair. Though DSS usually allows him to complete paperwork at home without visiting the DSS office, he still needs to get to the DSS office. On one occasion, for example, he needed to visit the DSS office to replace his food stamp card. He knows no one whom he can send to Norwich in these situations. *Id.*

Charles Burdine is disabled by renal failure requiring hemodialysis treatment three times a week, hypertension and high cholesterol requiring medication, and heart problems relating to a heart attack. *Id.* ¶37. The dialysis treatment leaves him weak and tired during treatment and for a period

7

after each treatment, during which time he must rest and cannot engage in other activities. In addition to the disability, his weakness, exhaustion, and ongoing need for regular treatment make it impossible for him to take public transportation from his home in Willimantic to Norwich. He can complete and mail forms to DSS but needs assistance and time to complete these tasks. *Id.* He also cannot travel to appointments on the three days a week when he has dialysis. He does not have a phone from which to call DSS or to be reached at, nor does he have access to a fax or a copier. His Medicaid transportation to dialysis was improperly terminated, but was reinstated after intervention by counsel. *Id.* His DSS file is not tagged with information regarding his disability.[5]

Plaintiffs seek to certify a class consisting of "all disabled individuals who are or will be eligible for subsistence benefits through AABD, TFA, SAGA, Food Stamps, or Medicaid programs, who require reasonable accommodation to obtain and maintain essential services and benefits from Defendant DSS, and whose meaningful access to such subsistence benefits has been or is being denied or effectively limited by DSS." Am. Mot. for Class Certification [doc. #24], at 1-2.

## II.

The District Court is required to determine whether a class shall be certified as soon as practicable after commencement of an action brought as a class action. *See* Fed. R. Civ. P. 23(c)(1). To certify a class, the party seeking certification must demonstrate that it has met the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.

---

[5] The detailed information about the named Plaintiffs is presented here not to focus on the particularities of any of their individual situations, but to demonstrate the situations of persons who are asserted by Plaintiffs to be typical of the class and the difficulties they allegedly face in obtaining accommodations from Defendant because of Defendant's failure to institute policies common to the class.

*See* Fed. R. Civ. P. 23(a); *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982); *Marisol A. v. Giuliani*, 126 F.3d 372, 375-76 (2d Cir. 1997). In addition, the proposed class must qualify under one of the subdivisions of Rule 23(b). *See* Fed. R. Civ. P. 23(b); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974). In determining whether to certify the class, the District Court is required to consider only the allegations set forth in the complaint, and take all of Plaintiff's allegations as true. *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978). The plaintiff bears the burden of demonstrating that the class is appropriate for certification. *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999) ("The party seeking to certify a class bears the burden of demonstrating numerosity, commonality, typicality, and adequacy."). The Second Circuit has instructed District Courts that Rule 23 is to be given a liberal rather than a restrictive interpretation. *See Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 632 (S.D.N.Y. 1996) (citing *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208-09 (2d Cir. 1972) and *Green v. Wolf Corp.*, 406 F.2d 291, 298, 301 (2d Cir. 1968)). The Court will address each of the Rule 23 requirements in turn.

**Numerosity**

The first requirement for class certification is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). The plaintiff is not required to provide an exact number of potential class members. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members in order to satisfy the numerosity requirement."). Additionally, "courts may make common sense assumptions to support a finding of numerosity." *Weissman v. ABC Fin. Servs., Inc.*, 203 F.R.D. 81, 84 (E.D.N.Y. 2001) (internal quotation omitted). The Second Circuit has found that "numerosity is presumed at a level

of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

The potential universe of this class is quite large. Plaintiff has supplied evidence consisting mainly of statistical showings from DSS's data sources, which specify the number of individuals receiving disability-based benefits from the various DSS programs. Based on a DSS memorandum, it appears that the total number of beneficiaries in the towns served by the now-closed offices is approximately 59,799, and the total statewide is approximately 377,862. Jan Miller Report, Am. Mot. for Class Certification [doc. #24], Ex. A. DSS does not maintain information regarding disabilities among its beneficiary population, and so it is difficult to determine exactly how many beneficiaries are disabled. *Id.* at 3. Nonetheless, reasonable assumptions can be made. The U.S. Department of Health and Human Services estimates that as many as forty percent of the adult welfare population may have learning disabilities and up to twenty eight percent of welfare beneficiaries may have mental health conditions. *Id.* Furthermore, the DSS memorandum indicates that there are 2,240 AABD recipients from the closed offices who receive aid based on blindness or other disability, 798 who receive aid based on age, many of whom would likely have disabilities, and 631 receiving SAGA assistance, most of whom can be presumed to have disabilities since medical incapacity is the most common means by which SAGA applicants qualify for aid. *Id.*

The Second Circuit lists other considerations for finding numerosity in *Robidoux*: "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux*, 987 F.2d at 936. These factors all speak in favor of certification: the Plaintiffs are dispersed throughout the state; they are by definition people of limited

10

financial resources; they mostly lack the legal sophistication and financial wherewithal to bring individual suits; and the membership of the class is regularly shifting as new applicants are granted benefits by DSS, and others leave the rolls.

Defendants do not dispute any of these numbers or findings, but confine their objection to arguments related to the merits of the named Plaintiffs' claims, arguing that they cannot establish pervasive and systematic failure on the part of DSS and that Plaintiffs have not produced evidence linking the DSS's actions to its alleged inability to fulfill its statutory obligations to disabled beneficiaries. Defs' Mem. in Opp'n to Pls' Am. Mot. for Class Certification [doc. #29], at 15. Defendants may ultimately prevail on their claims. However, because Plaintiffs' assertions must be taken as true at this stage, *Shelter Realty*, 574 F.2d at 661 n.15, because Plaintiffs need not provide evidence of exact size at this stage, and can rely upon estimates, and because the other factors all speak in favor of certification, the Court finds that Plaintiffs satisfy Rule 23(a)'s numerosity requirement. *Robidoux*, 987 F.2d at 935-36.

**Commonality**

Rule 23(a) next requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a). These questions must "predominate over questions peculiar to individual members of the class." *Civic Ass'n of the Deaf*, 915 F. Supp. at 632-33 ("When such common questions do predominate, differences among the questions raised by individual members will not defeat commonality."). Courts have found that "the test for commonality is not demanding" and is met so long as there is at least one issue common to the class. *Mullen v. Treasure Chest Casino, LLC.*, 186 F.3d 620, 625 (5th Cir. 1999).

Here, Plaintiffs claim that Defendants have violated the ADA and the Rehabilitation Act by

failing to institute adequate procedures to appropriately accommodate disabled recipients of DSS benefits. They assert that the questions of whether Defendants have failed to institute adequate procedures and whether that failure gives rise to a violation of the ADA and the Rehabilitation Act are questions common to the entire class. Pls' Reply to Defs' Mem. in Opp'n [doc. #41] at 18-20. Defendants contend Plaintiffs cannot establish commonality because the question of whether DSS has denied reasonable accommodations requires an individual assessment of the needs of each Plaintiff. Defs' Mem. in Opp'n to Pls' Am. Mot. for Class Certification [doc. #29], at 17-22.

As noted *supra*, Plaintiffs define the class as "all disabled individuals who are or will be eligible for subsistence benefits through AABD, TFA, SAGA, Food Stamps, or Medicaid programs, who require reasonable accommodation to obtain and maintain essential services and benefits from Defendant DSS and whose meaningful access to such subsistence benefits has been or is being denied or effectively limited by DSS." Am. Mot. for Class Certification [doc. #24], at 1-2. Plaintiffs' definition of the class was refined somewhat at oral argument, where it was made clear that the claim is not focused on persons whose requests for accommodations had been denied by DSS. Rather, the crux of the case is a challenge to an alleged lack of a systemic process for reasonably identifying and accommodating applicants and recipients. Ultimately, Plaintiffs' claim is purely for prospective injunctive relief common to the class, in the nature of systems, regulations, and guidelines, and Plaintiffs do not seek any individual fact-dependent determinations. Accordingly, the Court will modify the definition of the proposed class and will consider this a request to certify a class composed as follows:

> All disabled individuals who are or will be eligible for subsistence benefits through AABD, TFA, SAGA, Food Stamps, or Medicaid programs, who require reasonable accommodation to obtain and maintain essential services and benefits from Defendant DSS, and who have

been denied reasonable accommodation through DSS's failure to implement appropriate system-wide procedures and regulations for addressing accommodations, including, *inter alia*, grievance, notice, and recordkeeping procedures.

The Court finds that the question of reasonable accommodations is common to the class as defined here since Plaintiffs are challenging acts and omissions of DSS that are not specific to any particular Plaintiff. As the Eastern District of New York stated in an analogous setting: "While the details of each individual plaintiff's alleged injury may vary, the predominant issues of fact and law include plaintiffs' disability, defendants' alleged reduction of [services] and the alleged resulting denial of meaningful and timely access to public assistance offered by New York City. Plaintiffs therefore satisfy Rule 23(a)(2)'s commonality requirement." *Henrietta D. v. Giuliani*, 1996 U.S. Dist. LEXIS 22373, *42 (E.D.N.Y. Oct. 25, 1996); *see also Carr v. Wilson-Coker*, 203 F.R.D. 66, 75 (D.Conn. 2001). Here too, the Court finds that the commonality requirement has been met.

**Typicality**

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). This requirement is usually met when the representative plaintiffs are subject to the same policies as the putative class members. *See Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."). Defendants argue that Plaintiffs fail to meet this requirement for the same reasons they failed to meet the commonality requirement. Indeed, the Supreme Court has noted that "the commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 158 n.13.

Accordingly, for the reasons stated *supra* in the discussion on commonality, and because the representative Plaintiffs are subject to the same policies and practices as the putative class members, the Court finds that Plaintiffs have satisfied their burden of showing typicality.

### Fair and Adequate Representation

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). This rule requires Plaintiffs to demonstrate both that their attorneys are competent to handle the litigation and that the named Plaintiffs do not have interests that are antagonistic to the class. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

The named Plaintiffs are represented by attorneys from Greater Hartford Legal Aid, Connecticut Legal Services, and New Haven Legal Assistance Association. They represent that "Plaintiffs' counsel are experienced in federal class action litigation on behalf of impoverished individuals and families." Pls' Reply to Defs' Mem. in Opp'n [doc. #41] at 24; *see also Carr*, 203 F.R.D. at 75. Defendants do not challenge this representation. The Court finds that Plaintiffs' counsel is competent to handle the litigation.

Plaintiffs also represent that the named Plaintiffs do not have interests antagonistic to the interests of the members of the class, in that they have been subject to the same deprivation as the absent class members and are only seeking enforcement of federal law in a manner that would benefit all members of the class equally. Pls' Reply to Defs' Mem. in Opp'n [doc. #41] at 24. Defendants respond that none of the Plaintiffs have been denied an accommodation. Defs' Mem. in Opp'n to Pls' Am. Mot. for Class Certification [doc. #29], at 23. Because there has been no showing

that Plaintiffs have interests antagonistic to the class and in fact any resolution will affect the named Plaintiffs as it affects the class members, the Court finds the requirement of fair and adequate representation to be met. Accordingly, the Court finds that the Plaintiffs meet the requirements of Rule 23(a).

### Rule 23(b)

In addition to meeting the requirements of Rule 23(a), Plaintiffs must demonstrate that they qualify under one of the categories in Rule 23(b). The Plaintiffs seek to qualify under 23(b)(2), which provides: "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs allege that Defendants have failed to act (by providing appropriate accommodations) on grounds generally applicable to the class, and that appropriate injunctive relief will benefit the class as a whole. Pls' Reply to Defs' Mem. in Opp'n [doc. #41] at 25.

Cases of this nature, alleging systemic failure of governmental bodies to properly fulfill statutory requirements, have been held to be appropriate for class certification under Rule 23(b)(2). *See, e.g., Brown v. Giuliani*, 158 F.R.D. 251, 269 (E.D.N.Y. 1994) ("Plaintiffs' complaint falls within Rule 23(b)(2). Defendants' failure to act is said to be institutional not merely a cumulation of individual cases. The final injunctive and declaratory relief requested here would inure to the benefit of all class members in gaining a timely processing of their applications for benefits."). The Court finds that class certification is appropriate here, as the allegations specify conduct by Defendant directed at the class as a whole, and injunctive relief would be appropriate with regard to the class

as a whole. The Court emphasizes that the class certified in this order is certified on the basis of the broad, system-wide policies of DSS, as that is what Plaintiffs represented at oral argument. If ensuing developments in the case indicate that individual disputes do in fact predominate and require the Court to address the situations of individual Plaintiffs, the Court may reconsider the certification.

### III.

For the reasons discussed above, the Court finds that Plaintiffs meet both the requirements of Rule 23(a) and Rule 23(b)(2). The Court certifies a Plaintiff class consisting of the following: All disabled individuals who are or will be eligible for subsistence benefits through AABD, TFA, SAGA, Food Stamps, or Medicaid programs, who require reasonable accommodation to obtain and maintain essential services and benefits from Defendant DSS, and who have been denied reasonable accommodation through DSS's failure to implement appropriate system-wide procedures and regulations for addressing accommodations, including, *inter alia*, grievance, notice, and recordkeeping procedures.

IT IS SO ORDERED.

/s/       Mark R. Kravitz       
U.S.D.J.

Dated at New Haven, Connecticut: March 12, 2004