consistently and timely provide reasonable accommodations, as appropriate, to plaintiffs and members of the proposed plaintiff class, resulting in delays in processing benefits and denials of benefits to plaintiffs and members of the proposed plaintiff class.

71. The office closings and staff reductions have contributed to significant delays in processing applications and changes in benefits. According to DSS Intake Reports, 34% of pending applications were overdue, as of December, 2003. This is a 16% increase from November, 2002, when 18% of applications were overdue. A significant number of these applications are for AABD state supplement benefits for the aged, blind and disabled, as well as Medicaid benefits for persons with disabilities.

72. The DSS staff reductions and increases in individual worker caseloads have also contributed to significant delays in taking benefit applications, and to a failure to fully inform applicants of relevant eligibility criteria, thereby restricting the opportunities for applicants with disabilities to receive necessary reasonable accommodations in accessing benefits, programs and services. This disproportionally impacts proposed plaintiff class members, because disability itself is a relevant eligibility criteria for cash assistance. Most individuals must have a medical basis for not being able to work to qualify for SAGA cash assistance. An employable person with children can qualify for Temporary Family Assistance (TFA) for only a limited time period of 21 months plus two possible extensions of six months each, if the person is deemed to have been in good faith compliance with program requirements. Other extensions are only available if there are two or more barriers to work, domestic violence is present which impedes the ability

to work, the individual is medically determined to be incapacitated and unable to work, or the individual qualifies under several other limited exemptions.

73. DSS workers routinely fail to inform those individuals potentially eligible for SAGA cash, those reaching time limits, or those reapplying after losing TFA eligibility, of these alternate ways to qualify based on "barriers" or disability. As a result, plaintiffs and proposed class members are given the incorrect impression that they are ineligible and do not have the right to apply for benefits.

74. As a result of the office closings and staff reductions, DSS workers have even less time than prior to these events to provide appropriate, reasonable accommodations to plaintiffs and members of the proposed plaintiff class, as persons with disabilities. DSS workers routinely fail or refuse to inform applicants that they have the right to request reasonable accommodations such as assistance with completing forms, or obtaining needed proof, if they are disabled.

75. While staff in various DSS offices have periodically employed a "service needs assessment" purportedly designed to initially screen for disabling conditions or barriers to work possessed by TFA program recipients, the defendant Commissioner has failed or refused to act to ensure that this tool is routinely and uniformly used statewide on an ongoing basis, and its use has identified far fewer DSS clients with disabilities than exist in the agency's client population.

76. DSS staff in various offices periodically use a manual file tagging or computer identification system to purportedly track applicants or recipients previously screened or identified as disabled and requiring reasonable accommodations, but the

31

defendant Commissioner has failed or refused to act to ensure that these methods are routinely and uniformly used statewide on an ongoing basis, and their use has identified far fewer DSS clients with disabilities requiring reasonable accommodations than exist in the agency's client population.

77. Defendants have failed to adopt, implement, maintain, or monitor policies and procedures to reasonably accommodate, if necessary and appropriate, program-eligible persons with disabilities, in a manner that reasonably ensures they have an opportunity to meaningfully access DSS-administered benefits, programs and services.

78. The defendant Commissioner has failed or refused to ensure that DSS has implemented, adopted, maintained, or enforced any effective or adequate statewide policy, protocol, guidance, regulation, process, or procedure designed to ensure:

    a. Routine, timely and effective screening or identification of applicants or recipients with disabling conditions who might require reasonable accommodations to access and maintain eligibility for DSS benefits, programs and services;

    b. Routine, uniform, statewide notification to applicants or recipients with disabilities of: the availability of waivers of mandatory face-to-face appointment interviews for applications and redeterminations of eligibility for the TFA, SAGA and Food Stamp programs; how to request such waivers; or the standards under which they are granted or denied;

    c. Routine tracking of applicants or recipients screened or identified as disabled and requiring reasonable accommodations, so as to continue to affirmatively

32

offer and provide such accommodations to these individuals on an ongoing basis, as needed;

   d. Evaluation or assessment of the adequacy of the performance of DSS staff in performing their obligations under the ADA and the Section 504 Rehabilitation Act to reasonably accommodate applicants and recipients with disabilities in accessing and maintaining eligibility for benefits, programs and services;

   e. Coordination with other entities, such as community action agencies and other DSS contractors, as appropriate, to ensure that these entities: reasonably accommodate DSS applicants and recipients with disabilities; maintain standards that ensure workers in such agencies and organizations are adequately trained and supervised to recognize disabling conditions and understand appropriate reasonable accommodations to be made for persons with disabilities; and receive information regarding which DSS recipients are disabled and what reasonable accommodations are needed to ensure access to DSS benefits, programs and services.

   f. Instruction of DSS staff regarding the variety and types of reasonable accommodations they may provide to applicants or recipients with disabling conditions, how to identify requests or needs of such individuals for reasonable accommodations, or how to assess the appropriateness of a reasonable accommodation for any particular program client in any particular circumstance.

  79. The defendant DSS Commissioner does not provide, on an ongoing basis, adequate, timely or effective written or oral notice of, or information regarding the

nondiscrimination requirements of the ADA, including the right to request reasonable accommodations, to plaintiffs or members of the proposed plaintiff class.

80. The defendant DSS Commissioner has failed or refused to reasonably notify, on an ongoing basis, applicants or recipients with disabilities of the agency's ADA grievance policy, adopted on or about April 1, 2003, and purportedly designed to allow applicants and recipients with disabilities the opportunity to appeal denials of reasonable accommodation requests.

81. The defendant DSS Commissioner has failed or refused to ensure that staff routinely obtain information regarding the potential existence of disabling conditions of applicants or recipients for DSS-administered benefits, programs or services which might require reasonable accommodations, prior to taking adverse actions or sanctions against those individuals, including denials or terminations of eligibility, exemptions, or extensions, where those disabling conditions might militate against the adverse actions or sanctions as mitigating or defensive factors.

82. The defendant DSS Commissioner has not adopted appropriate or adequate written grievance procedures that would allow plaintiffs and members of the proposed plaintiff class reasonable opportunities to be notified of their right to file grievances to redress violations of their reasonable accommodation rights under the ADA or Section 504 of the Rehabilitation Act, and to file such grievances and obtain relief when their rights to reasonable accommodations under the ADA and Section 504 are so violated.

83. Defendants must meet their ADA and Section 504 obligations in conjunction with mandatory federal standards of equitable administration of subsistence

benefit programs. In its operation of the TFA, Food Stamp and Medicaid programs, the State of Connecticut is required to conduct a program in all political subdivisions of the state. (TFA - 42 U.S.C. § 602(a)(1); 45 C.F.R. § 205.120; Food Stamp program - 7 U.S.C. § 2020(d); Medicaid - 42 U.S.C. § 1396a(a)(1), 42 C.F.R. § 431.50(b)(1)). There must be equitable standards of assistance and administration throughout the state, and specifically with cash assistance programs, there must be equitable treatment of individuals in similar circumstances throughout the state. (TFA - 45 C.F.R. §§ 205.120 and 205.130(b); Medicaid - 42 C.F.R. 431.50(b)(1)).

84. Defendants' ADA and Section 504 obligations must additionally be met in conjunction with the obligations of the defendant DSS Commissioner, together with the Secretary of the Office of Policy and Management, an agent of the defendant Governor, to ensure: the development of DSS regions for service delivery that consider the "location of department facilities", "the accessibility of transportation for clients to service delivery offices and for workers to clients" and "federal requirements"; "coordinated control and direction for programs to ensure consistency and uniformity among the regions in the development and provision of services"; and the encouragement of collaborations that "maintain the client-focused structure of the health and human services system". Conn. Gen. Stat. § 17b-6(b).

85. Plaintiffs and the proposed class they represent have no adequate remedy at law and are being irreparably injured by the defendants' actions of closing DSS offices and reducing staff, which exacerbated and perpetuated the continuing statewide, systemic failure or refusal of defendants to identify, screen, track and reasonably accommodate

35

plaintiffs and the proposed class, as persons with disabilities, to ensure their ability to meaningfully access DSS-administered benefits, programs and services, and to adopt, implement and maintain-policies and procedures designed to afford opportunities for such access.

### FIRST CAUSE OF ACTION:
### AMERICANS WITH DISABILITIES ACT - REASONABLE ACCOMMODATION

86. Paragraphs 1 through 85 are incorporated by reference as if fully stated herein.

87. DSS is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1)(A), (B), and U.S. Department of Justice implementing regulations, at 28 C.F.R. § 35.104.

88. Each named plaintiff and each absent member of the plaintiff class has at least one "disability," as that term incorporates having a physical or mental impairment that substantially limits one or more of the major life activities of such individual, as defined under the ADA at 42 U.S.C. § 12102(2) and 28 C.F.R. § 35.104.

89. Each named plaintiff and each absent member of the plaintiff class is a "qualified individual with a disability" as defined under the ADA at 42 U.S.C. § 12131(2) and 28 C.F.R. § 35.104, as an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by DSS.

36

90. By closing offices and reducing staff, defendants have exacerbated and perpetuated an ongoing, statewide, systemic breakdown of delivery of DSS benefits, services and programs, insofar as they have failed or refused to implement, maintain or monitor a reliable, statewide system of ensuring that the reasonable accommodation needs of applicants and recipients with disabilities are met, with respect to accessing and maintaining eligibility for those benefits, programs and services, in violation of Title II of the ADA and its implementing regulations. 42 U.S.C. § 12112(b)(5)(A); 28 C.F.R. § 35.130(b)(7).

### SECOND CAUSE OF ACTION: AMERICANS WITH DISABILITIES ACT - DISCRIMINATORY EXCLUSION AND DENIAL OF BENEFITS

91. Paragraphs 1 through 90 are incorporated by reference as if fully stated herein.

92. Defendant Commissioner, pursuant to the ongoing funding and policy authority and directives of defendant Governor, continues to administer DSS public assistance programs in a manner that excludes plaintiffs and proposed plaintiff class members from participation in, or denies them the benefits of DSS-administered public assistance programs and services to which they are otherwise entitled, and subjects them to unlawful discrimination, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulations. 28 C.F.R. § 35.130(b)(1)(i).

## THIRD CAUSE OF ACTION:
## LACK OF INFORMATION REGARDING ADA RIGHTS

93. Paragraphs 1 through 92 are incorporated by reference as if fully stated herein.

94. Under regulations promulgated by the U.S. Department of Justice which implement the ADA, DSS, as a public entity, is required to make available to plaintiffs and the proposed class they represent information regarding Title II of the ADA and its applicability to the services and programs of DSS, and the protections against discrimination which are assured them by the ADA. 28 C.F.R. § 35.106.

95. In violation of 28 C.F.R. § 35.106, defendant Commissioner has continued to fail or refuse to make information regarding Title II of the ADA and its applicability to DSS-administered public assistance programs available to plaintiffs and members of the proposed plaintiff class, thereby preventing them from effectively exercising their rights as disabled persons to meaningful access to DSS-administered benefits, programs and services.

### FOURTH CAUSE OF ACTION: LACK OF ADA GRIEVANCE PROCEDURE

96. Paragraphs 1 through 95 are incorporated by reference as if fully stated herein.

97. DSS is a public entity that employs 50 or more persons.

98. U.S. Department of Justice regulations implementing the ADA require DSS, as a public entity employing 50 or more persons, to adopt and publish a grievance

38

procedure providing for prompt and equitable resolution of complaints of ADA Title II violations. 28 C.F.R. § 35.107(b).

99. In violation of these ADA regulations, defendant Commissioner has failed or refused to adopt and publish, or otherwise inform or notify plaintiffs of appropriate and adequate ADA grievance procedures that would reasonably allow the named plaintiffs and members of the proposed plaintiff class to file grievances and obtain relief when their rights under the ADA are violated, thereby preventing them from effectively having the opportunity to uphold their rights as persons with disabilities to meaningful access, with or without reasonable accommodations, to DSS- administered benefits, programs and services.

### FIFTH CAUSE OF ACTION: SECTION 504 OF THE REHABILITATION ACT - REASONABLE ACCOMMODATION

100. Paragraphs 1 through 99 are incorporated by reference as if fully stated herein.

101. DSS is a "recipient" of "federal financial assistance," as defined by Section 504 of the Rehabilitation Act of 1973 and by implementing regulations promulgated by the U.S. Department of Justice, the U.S. Department of Health and Human Services, and the U.S. Department of Agriculture, thereby rendering it subject to Section 504. 29 U.S.C. § 794(b)(1); 28 C.F.R. § 41.3(d), (e); 45 C.F.R. § 84.3(f), (h); 7 C.F.R. § 15b.3(f), (g).

102. The administration by DSS of the TFA, Food Stamp and Medicaid programs, which are funded in part with federal financial assistance, constitutes

39

"programs or activities" subject to Section 504 of the Rehabilitation Act of 1973. 29 U.S.C. § 794(b)(1).

103. Each named plaintiff and each absent member of the proposed plaintiff class has at least one "disability," as that term incorporates having a physical or mental impairment that substantially limits one or more of the major life activities of such individual, as defined under Section 504 of the Rehabilitation Act of 1973, at 29 U.S.C. § 705(9)(B), (20)(B).

104. Each named plaintiff and each absent member of the proposed plaintiff class is a "handicapped person," as that term incorporates having a physical or mental impairment that substantially limits one or more of the major life activities of such individual, pursuant to the Section 504 implementing regulations of the U.S. Departments of Justice, Health and Human Services, and Agriculture. 28 C.F.R. § 41.31; 45 C.F.R. § 84.3(j), (l); 7 C.F.R. § 15b.3(i), (j), (k).

105. Each named plaintiff and each absent member of the proposed plaintiff class is a "qualified handicapped person," as that term incorporates a handicapped person who meets the essential eligibility requirements for the receipt of services, pursuant to the Section 504 implementing regulations of the U.S. Departments of Justice, Health and Human Services, and Agriculture. 28 C.F.R. § 41.32; 45 C.F.R. § 84.3(k)(4); 7 C.F.R. § 15b.3(n).

106. By closing offices and reducing staff, defendants have exacerbated and perpetuated an ongoing, statewide, systemic breakdown of delivery of DSS benefits, services and programs, insofar as they have failed or refused to implement, maintain or

40

monitor a reliable, statewide system of ensuring that the reasonable accommodation needs of applicants and recipients with disabilities are met, with respect to accessing and maintaining eligibility for those benefits, programs and services, in violation of Section 504 of the Rehabilitation Act and its implementing regulations. 29 U.S.C. § 794(a); 28 C.F.R. § 41.53.

**SIXTH CAUSE OF ACTION: SECTION 504 OF THE REHABILITATION ACT - DISCRIMINATORY EXCLUSION AND DENIAL OF BENEFITS**

107. Paragraphs 1 through 106 are incorporated by reference as if fully stated herein.

108. Defendant Commissioner, pursuant to the ongoing funding and policy authority and directives of defendant Governor, continues to administer DSS public assistance programs in a manner that excludes plaintiffs and proposed class members from participation in, or denies them the benefits of DSS-administered public assistance programs and services to which they are otherwise entitled, and subjects them to discrimination, in violation of Section 504 and its implementing regulations. 29 U.S.C. § 794(a); 28 C.F.R. §§ 41.51(a), 41.51(b)(1)(i); 45 C.F.R. §§ 84.4(b)(1)(i); 84.4(b)(4).

**SEVENTH CAUSE OF ACTION:**
**LACK OF REHABILITATION ACT SECTION 504 GRIEVANCE PROCEDURE**

109. Paragraphs 1 through 108 are incorporated by reference as if fully stated herein.

110. DSS is a recipient under Section 504 that employs 15 or more persons.

111. Federal regulations implementing Section 504 for recipients of federal funding from the U.S. Department of Health and Human Services and the U.S. Department of Agriculture require the defendant DSS Commissioner, as administrator of a recipient that employs 15 or more persons, to adopt grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints alleging any action prohibited by the Act. 45 C.F.R. § 84.7(b); 7 C.F.R. § 15b.6(b).

112. Defendant Commissioner has violated these Section 504 regulations by failing or refusing to establish an adequate grievance procedure for the named plaintiffs and members of the proposed plaintiff class to file grievances and obtain relief when their rights under Section 504 are violated, thereby preventing them from having the opportunity to effectively exercise their rights as persons with disabilities to meaningful access, with or without reasonable accommodations, to DSS administered benefits, programs and services.

### EIGHTH CAUSE OF ACTION: DUE PROCESS

113. Paragraphs 1 through 112 are incorporated by reference as if fully stated herein.

114. At all times relevant herein, defendants were acting under color of statutes, ordinances, regulations, custom, or usage of the State of Connecticut.

115. Defendant Commissioner's actions in failing or refusing to ensure that DSS staff inform program applicants that DSS rules allow individuals with certain limitations in their ability to work to qualify for TFA or SAGA cash benefits, notwithstanding

42

sanctions or time limits, unlawfully hinders or prevents proposed plaintiff class members who would otherwise qualify for benefits from applying. This violates proposed plaintiff class members' rights guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which is actionable pursuant to 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

A.  Assume jurisdiction of this matter;

B.  Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) with respect to the proposed class identified herein;

C.  Enter a declaratory judgment, in accordance with 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring that the defendants' actions and failures or refusals to act violate the federal statutory and regulatory provisions, and Constitutional standards cited in the Causes of Action in the Complaint, as follows:

   (1) By continuing to fail or refuse to implement, maintain or monitor a reliable, statewide system of ensuring that the reasonable accommodation needs of DSS applicants and recipients with disabilities are met, with respect to accessing and maintaining eligibility for those benefits, programs and services, in violation of Title II of the ADA and its

43

implementing regulations, as recited in plaintiffs' FIRST CAUSE OF ACTION;

(2) By the defendant Commissioner, pursuant to the ongoing funding and policy authority and directives of defendant Governor, continuing to administer DSS public assistance programs in a manner that excludes plaintiffs and proposed plaintiff class members from participation in, or denies them the benefits of DSS-administered public assistance programs and services to which they are otherwise entitled, and subjects them to unlawful discrimination, in violation of Title II of the ADA, and its implementing regulations, as recited in plaintiffs' SECOND CAUSE OF ACTION;

(3) By the continuing failure or refusal of defendant Commissioner to make information regarding Title II of the ADA and its applicability to DSS-administered public assistance programs available to plaintiffs and members of the proposed plaintiff class, thereby preventing them from effectively exercising their rights as persons with disabilities to meaningful access to DSS-administered benefits, programs and services, in violation of federal regulations implementing Title II of the ADA, as recited in plaintiffs' THIRD CAUSE OF ACTION;

(4) By the continuing failure or refusal of defendant Commissioner to adopt and publish, or otherwise inform or notify plaintiffs and members of the proposed plaintiff class of appropriate and adequate ADA grievance

procedures that reasonably would allow them to file grievances and obtain relief when their rights under the ADA are violated, thereby preventing them from effectively having the opportunity to uphold their rights as persons with disabilities to meaningful access, with or without reasonable accommodations, to DSS- administered benefits, programs and services, in violation of federal regulations implementing Title II of the ADA, as recited in plaintiffs' FOURTH CAUSE OF ACTION;

(5) By the continuing failure or refusal of defendants to implement, maintain or monitor a reliable, statewide system of ensuring that the reasonable accommodation needs of DSS applicants and recipients with disabilities are met, with respect to accessing and maintaining eligibility for those benefits, programs and services, in violation of Section 504 of the Rehabilitation Act and its implementing federal regulations, as recited in plaintiffs' FIFTH CAUSE OF ACTION;

(6) By the defendant Commissioner, pursuant to the ongoing funding and policy authority and directives of defendant Governor, continuing to administer DSS public assistance programs in a manner that excludes plaintiffs and proposed plaintiff class members from participation in, or denies them the benefits of DSS-administered public assistance programs and services to which they are otherwise entitled, and subjects them to discrimination, in violation of Section 504 and its implementing federal regulations, as recited in plaintiffs' SIXTH CAUSE OF ACTION;

(7) By the failure or refusal of the defendant Commissioner to establish an appropriate and adequate grievance procedure for the named plaintiffs and members of the proposed plaintiff class to file grievances and obtain relief when their rights under Section 504 are violated, thereby preventing them from having the opportunity to effectively exercise their rights as persons with disabilities to meaningful access, with or without reasonable accommodations, to DSS-administered benefits, programs and services, in violation of federal regulations implementing Section 504 of the Rehabilitation Act, as recited in plaintiffs' SEVENTH CAUSE OF ACTION;

(8) By the failure or refusal of defendant Commissioner to ensure that DSS staff inform DSS program applicants of the eligibility criterion that individuals with certain limitations in their ability to work might qualify for TFA or SAGA cash benefits, notwithstanding sanctions or time limits, thereby unlawfully hindering or preventing proposed plaintiff class members who would otherwise qualify for benefits from applying, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as recited in plaintiffs' EIGHTH CAUSE OF ACTION.

D. Enter temporary, preliminary and permanent injunctive relief, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, requiring defendants to comply with the Americans with Disabilities Act and Section 504 of the

Rehabilitation Act of 1973 and the implementing federal regulations of both Acts, as follows:

(1) Adopt, implement, and monitor, on an ongoing basis, statewide, systemic policies and procedures designed to ensure that DSS applicants and recipients with disabilities are routinely provided with appropriate identification or screening as individuals with disabilities requiring reasonable accommodations to meaningfully access DSS administered benefits, programs and services, and are consequently provided with such reasonable accommodations, as needed and as appropriate;

(2) Adopt, implement and monitor, on an ongoing basis, policies and procedures designed to notify applicants for and recipients of DSS administered benefits, programs and services of the nondiscrimination requirements of Title II of the ADA and their applicability to DSS-administered public assistance programs;

(3) Adopt, implement and monitor, on an ongoing basis, an appropriate and adequate grievance procedure providing for prompt and equitable resolution of complaints of ADA Title II violations and Section 504 violations and provide adequate, reasonable notice to applicants for and recipients of DSS-administered benefits, programs and services of their right to file grievances;

E. Enter temporary, preliminary and permanent injunctive relief, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, requiring defendant DSS

47

Fax: 860.456.7420
E-Mail: sbergert@connlegalservices.org
Their Attorney

Priya Cloutier (ct20598)
Connecticut Legal Services, Inc.
153 Williams Street
New London, CT 06320
Phone: 860.447.0323 x.112
Fax: 860.443.0109
E-Mail: pcloutier@connlegalservices.org
Their Attorney

Lucy Potter (ct23449)
Greater Hartford Legal Aid
99 Asylum Ave., 3rd Floor
Hartford, CT 06105-2465
Phone: 860.541.5002
Fax: 860.541.5050
E-Mail: lpotter@ghla.org
Their Attorney

Joanne Gibau (ct05730)
New Haven Legal Assistance Assoc.
426 State Street
New Haven, CT 06510-2018
Phone: 203.946.4811
Fax: 203.498-9271
E-Mail: jgibau@nhlegal.org
Their Attorney

Maria Morelli-Wolfe (ct23174)
Greater Hartford Legal Aid
999 Asylum Ave., 3rd Floor
Hartford, CT 06105-2465
Phone: 860.541.5042
Fax: 860.541.5050
E-Mail: mmorelliwolfe@ghla.org
Their Attorney

49

## CERTIFICATION

I hereby certify that the foregoing Second Amended Complaint was served in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 24th day of March 2004, by U.S. mail, first class, postage pre- paid and addressed to:

Hugh Barber, Esq.
Peter Brown, Esq.
Richard J. Lynch, Esq.
Assistant Attorneys General
Office of the Attorney General
55 Elm St., P.O. Box 120
Hartford, CT 06141-0120

_____
Greg Bass