UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LORI RAYMOND, *et al.*
Individually and on behalf of all
other persons similarly situated,

   Plaintiffs,

     v.

JOHN ROWLAND, in his official
capacity as Governor of the State of
Connecticut, and

PATRICIA WILSON-COKER, in her
official capacity as Commissioner
of the State of Connecticut Department of
Social Services,

   Defendants.

CIVIL ACTION NO.
3:03CV0118 (MRK)

(CLASS ACTION)

August 31, 2007

## JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

Pursuant to Fed. R. Civ. P. 23(e), the parties to this action, including the Plaintiff class of low-income Connecticut residents with disabling conditions, and Defendants M. Jodi Rell, Governor of Connecticut, substituted in her official capacity for former Defendant John Rowland, and Michael Starkowski, Commissioner of Connecticut Department of Social Services (DSS), substituted in his official capacity for former Defendant Commissioner Patricia Wilson-Coker, hereby move this Court for an order granting final approval of the Settlement Agreement in this matter.

In support of this motion, the parties state as follows:

1. Following a joint motion, on June 14, 2007, the Court entered an order: preliminarily

–1–

approving the Settlement Agreement in this matter; setting the form, content, manner and deadline for notice to the Plaintiff class; setting August 22, 2007 as the deadline for class members to notify the Court of their intent to comment on the Settlement Agreement; setting August 31, 2007 for filing of motions for final approval of the Settlement Agreement; and setting September 10, 2007 at 2 p.m. for the final fairness hearing.

2.  The parties hereby incorporate by reference their "Joint Motion for Preliminary Approval of Settlement Agreement and Class Notice, to Set a Date for a Final Fairness Hearing and Final Settlement Approval" and supporting joint brief, both filed June 8, 2007.

3.  The notice was translated into Spanish. DSS conducted a computer run on July 2, 2007 to "extract" the names of individuals to receive notice. 128,190 notices were mailed by DSS to individuals as specified in the Court's order of June 14, 2007. Mailing was accomplished between July 9, 2007 and July 13, 2007.

4.  The poster approved by this Court was translated into Spanish and bilingual versions were prominently displayed in the waiting rooms of all DSS offices beginning July 13, 2007, except the Norwich office where it was displayed beginning July 16, 2007. Copies of the notice in English and Spanish were available either next to the poster or nearby. Copies of the bilingual posters and notice were provided by DSS to all Community Action Agencies on July 13, 2007. The Department of Labor displayed posters and notices at its employment services sites pursuant to a request from DSS made on July 29, 2007 with a request that the posters be prominently displayed in

public areas and the notices be made readily available to the public from July 15, 2007 until the date of the final fairness hearing of September 10, 2007.

5. On July 7, 2007, copies of the notice in English and a copy of the Settlement Agreement were posted prominently on the DSS website. A copy of the notice in Spanish was posted on July 30, 2007. The notices and Settlement Agreement will remain on such website until at least September 11, 2007 [www.ct.gov/dss/settlement].

6. An affidavit prepared by Mary Jane Sandler, DSS Social Services Program Administration Manager, regarding DSS provision of notice, is attached as Exhibit A.

7. A flyer with the same information as the poster distributed by DSS, summarizing the Settlement Agreement and including contact information for Plaintiffs' counsel, was published in the June/July 2007 issue of the Connecticut Alliance for Basic Human Needs (CABHN) newsletter, with an article seeking to have the flyer distributed by the CABHN readership. A copy of the article is attached as Exhibit B. "CABHN is a statewide network of over 3,000 organizations, including social service providers, advocates, religious organizations and individuals concerned about issues affecting people with low income. CABHN was formed in 1992 to support and promote advocacy on welfare-related issues."[1]

8. Plaintiffs' counsel have spoken to 538 callers in response to the notice to the Plaintiff class. Virtually all callers wanted further explanation of the agreement and how its provisions might affect them. Feedback supporting the settlement was overwhelmingly positive, with limited negative comments that the provisions did not go far enough to

---

[1] CABHN description is from www.larcc.org , under "Education and Outreach," then under

address all the problems with DSS' benefit delivery. Callers repeatedly raised the following concerns with DSS services, without specifically addressing whether the Settlement Agreement addressed them adequately:

a.  Communication problems, including: need to make notices easier to understand; need to improve the telephone system so callers can get needed information; failure to return calls; lack of clear explanation of benefits and eligibility requirements in the various programs; failure to offer assistance or denial of assistance in meeting eligibility requirements such as obtaining documentation when difficult for the applicant/beneficiary to obtain independently due to disability; and insensitivity or rudeness by workers, and the need to train workers to be more effective with persons with disabilities.

b.  Erroneous denial or discontinuance of benefits or interruptions in benefits caused by paperwork lost by DSS.

c.  Delays in qualifying for needed benefits or receiving benefits.

d.  Excessive waiting time in the offices to see workers, particularly difficult for persons with disabilities.

e.  Office locations are not always near public transportation and can be difficult to get to for persons with disabilities. The offices need physical improvements to be accessible and comfortable for persons with disabilities.

f.  DSS needs more staff to handle the needs of program applicants/beneficiaries. Such staff should include more bilingual staff, social workers and persons with

---

"Who We Are."

    disabilities.

    g.  Frequent changes in DSS workers is hard to keep track of and makes it difficult to get needed information.

    h.  Benefits are often inadequate to meet need.

    i.  There is too much paperwork to obtain and maintain benefits. Duplicate paperwork has to be submitted to various benefit programs administered through DSS and this is difficult for persons with disabilities.

9.  Assistant Attorney General (AAG) Hugh Barber, as counsel for Defendant Commissioner, received several (approximately three) phone calls from individuals indicating they were calling because they received a copy of the <u>Raymond</u> notice. These individuals wanted the Attorney General to know DSS had either failed to grant them benefits or had provided benefits in an amount the individual felt was too low.

10.  AAG Barber received copies of a large number of comments also submitted to the Court and counsel for Plaintiffs. In the opinion of AAG Barber, these complaints generally fell into the same foregoing categories, *i.e.*, either claims DSS erroneously denied benefits or the benefits provided were too low. Several complainants also complained about the responsiveness of their DSS workers. Finally, some of the complaints were outside the scope of the litigation or were difficult to understand regarding whether there might be a concern related to the litigation.

11.  AAG Barber also received several letters from individuals which did not appear to have also been submitted to the Court or counsel for Plaintiffs. These complaints are consistent with the foregoing categories of complaints.

12. The Court received twenty-two (22) written Notices of Intent to Comment by August 22, 2007. Twenty commenters had no objections to the Settlement Agreement. Two individuals, Leonard Bourett and Raymond Godaire object to the Settlement Agreement because the litigation does not seek money damages, a claim outside the scope of this litigation. Another individual wanted money damages, but did not object to the Settlement Agreement. One individual felt that her opinion regarding the litigation should have been solicited at an earlier stage. Attorney Carmine Perri submitted a comment on behalf of Mr. Mudget requesting an opportunity to comment at the Fairness hearing regarding the Personal Care Assistance Waiver and DSS administrative errors that led to the denial of such benefits, placing him behind a number of people on an extensive waiting list. Individuals who submitted comments to the Court raised issues similar to those raised by callers, identified above in paragraph 8.

13. Some of the written comments offered recommendations to improve access to DSS benefits and services, including:

   a. Annual mailing to DSS medical program recipients of a book listing covered services and names of doctors and dentists who accept DSS payment, and multiple types of notice for individuals who have difficulty processing information through written notice.

   b. Conduct fair hearings in-person rather than by video screen.

   c. Provision of notice to recipients with longer than 10 days to respond to DSS notice of proposed discontinuance.

    d.  Immediate appeal process for denial of necessary brand name drugs.

    e.  Hire additional staff, including disabled people.

    f.  New DSS building needed in New Haven designed to be more accessible, with a better location and accessible parking.

14. Some written comments were on issues outside the scope of this litigation. One requested assistance obtaining monetary compensation for reasons related to the death of the commenter's sister. Others described their long wait for subsidized housing. Other DSS recipients commented on the low benefit levels which do not adequately consider the cost of renting private housing and the cost of living. It was difficult to discern whether there might be a concern related to the litigation in some of the comments.

15. Counsel for the parties do not believe the comments received by the Court or counsel should lead to disapproval of the Settlement Agreement, focused on improvement in functioning and the manner in which DSS delivers benefits to better serve persons with disabilities. The attorneys for the parties believe that full implementation of the Settlement Agreement will result in improvement in most of the areas of concern identified by callers or commenters, with the exception of those issues not covered in this litigation.

16. Plaintiffs incurred the following major expenses in this litigation :

    a.  Expert fees totaling $15,650.00: Peter Blanck, Ph.D., J.D., Director, Law, Health Policy & Disability Center, University of Iowa College of Law, an expert in systems serving persons with a range of disabilities, $10,000.00;

Nancie Payne, M.S., President, Payne & Associates of the Northwest, Inc., Olympia, Washington, an expert in learning disabilities and attention disorders, $1,650.00; and Norman Hoffman, Ph.D., President, Evince Clinical Assessments, Waynesville, North Carolina, an expert in mental health disorders and clinical assessment instruments, $4,000.00.

   b.  Deposition court reporting expenses totaling $9469.81 relating to the following depositions: Marc Ryan, Secretary, Office of Policy and Management; Patricia Wilson-Coker, then Commissioner of DSS; Kevin Loveland, DSS Director of Family Services; Irene Mason, DSS Director, Affirmative Action Division; Silvana Flattery, Ronald Roberts and Frances Freer, DSS Regional Directors; John Souchuns and Michael Kiselica, DSS office managers; Laura DiGalbo, DSS Bureau of Rehabilitation Services; Judy Mentz, Donna Velardi and Jacqueline Greenfield, DSS staff members; and Norman Hoffmann.

   c.  Conference calls: $1500.

17. Plaintiffs' current counsel in this matter have expended over 5700 hours in pursuit of this litigation.

WHEREFORE, the parties request entry of an order of final Court approval of the Settlement Agreement.

Plaintiffs, by Undersigned, Authorized
Counsel of Record:

Michael Starkowski, Commissioner,
Department of Social Services, by
Undersigned, Authorized Counsel of
Record:

Joanne Gibau
Federal Bar No. ct05730
New Haven Legal Assistance Assoc.
426 State Street
New Haven, CT 06510-2018
(203) 946-4811
(203) 498-9271 (fax)
jgibau@nhlegal.org

Hugh Barber, Assistant Attorney General
Federal Bar No. ct05731
Office of the Attorney General
55 Elm St., P.O. Box 120
Hartford, CT 06141-0120
(860) 808-5210
(860) 808-5385 (fax)
hugh.barber@po.state.ct.us